**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Linda TACKETT (95–6127); Grayson
Tackett (95–6128), Defendants–
Appellants.**

**Nos. 95–6127, 95–6128.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 16, 1996.

Decided May 15, 1997.

Rehearing and Suggestion for Rehearing
En Banc Denied June 23, 1997.

---

A. Duane Schwartz, Asst. U.S. Attorney, Terry M. Cushing, Asst. U.S. Attorney, John L. Caudill, Asst. U.S. Attorney (briefed), David J. Hale (argued), Office of the U.S. Attorney, Louisville, KY, for Plaintiff–Appellee.

Samuel Manly (argued and briefed), Louisville, KY, for Defendants–Appellants.

Before: JONES, RYAN, and MOORE, Circuit Judges.

## OPINION

MOORE, Circuit Judge.

Linda and Grayson Tackett appeal their convictions and sentences in this case involving obstructing justice and making a false statement on a required firearm record. For the reasons discussed below, we affirm the convictions but remand both cases to the district court for resentencing.

### I. FACTS

On December 6, 1991, appellants' son Brian Tackett burned down a church.[1] In June of 1992 he and several others were charged with conspiracy to commit arson; Brian alone was accused and eventually convicted of arson, transporting a stolen vehicle, and carrying a firearm during a crime of violence.

---

1. Brian Tackett apparently maintains that he did not in fact commit the arson. In light of the jury's verdict below, we construe all disputed facts in favor of the government. *See Chatman v. Slagle*, 107 F.3d 380, 381 n. 3 (6th Cir.1997). In addition, this court upheld his conviction for the burning. *United States v. Pierce*, 62 F.3d 818 (6th Cir.1995). The facts surrounding the arson are set out in that opinion.

Between the time that the younger Tackett was indicted and the date of his trial, his parents attempted to sabotage the government's firearms case by falsifying records and attempting to influence Steve Kirby, a potential witness in the case. The government accused Brian Tackett of carrying a .45 caliber pistol when he burned the church. He had obtained this gun sometime during the first few months of 1991 from Kirby, a licensed firearms dealer, but the sale had not been recorded in Kirby's transfer log, and the proper form (ATF Form 4473) had not been completed. J.A. at 247–49. *See* 27 C.F.R. §§ 178.124, 178.125(e) (required firearm records). In September of 1992, appellant Grayson Tackett paid Kirby a visit to ask him to complete a Form 4473 for the purchase, but to record him (Grayson) as the purchaser and December 16, 1991—ten days after the church burning—as the date of transfer. J.A. at 249. Kirby did not at the time realize the significance of the false date and agreed to falsify the form. *Id.* at 249–50.

In the spring of 1993 Linda Tackett visited Kirby and asked him for a copy of the falsified form 4473. *Id.* at 251–52. She gave the document to her son's lawyer, who then filed a motion to dismiss the firearm charge on the grounds that Brian could not have carried the pistol during the arson because it was still in Kirby's shop at the time. *Id.* at 252, 173–74. The form eventually found its way to Raymond Wilt, the ATF agent in charge of the arson investigation, who apparently suspected that the form had been falsified and decided to investigate. *Id.* at 168, 174–75. During the next week Wilt interviewed Kirby several times about the form. Kirby initially claimed that the form was correct, but, on March 4, when Wilt served him with a subpoena to appear before the grand jury that was investigating the accuracy of the form, Kirby came clean and told Wilt about the original sale and Grayson Tackett's visit. *Id.* at 175–81.

Wilt was apparently not satisfied that Kirby's new story was true.[2] *Id.* at 182, 256. He instructed Kirby to arrange a meeting with the Tacketts and gave him two miniature tape recorders to use at that meeting. *Id.* at 183. The resulting recordings, which were played at trial, *id.* at 279–280, 303, made it clear that the new, not the old, story was the true one, and that the Tacketts were asking Kirby to perjure himself before the grand jury. In the March 7 meeting, for example, Kirby read aloud a letter that, according to his trial testimony, Linda Tackett had written and her husband had given him. *Id.* at 304–05. The letter instructed Kirby that "[a]ll you know is you never sold Brian Tackett any guns.... The only people that know the real truth are Grayson and me [Linda].... You had a .45 Colt to sell and sold it to Grayson Tackett on December 16th, 1991. It was in your possession prior to December 16th, so it couldn't have been anywhere else.... If Brian Tackett was ever at your office you don't remember it." Tape of March 7, 1993.

Wilt testified as to this evidence before the grand jury, which then handed down an indictment against the Tacketts for obstruction of justice and against Grayson Tackett for falsifying a required firearm record.[3] J.A. at 209, 23–24 (indictment). A jury convicted both defendants of obstruction of justice, under 18 U.S.C. § 1503, and Grayson of falsifying the ATF form, under 18 U.S.C. § 924(a)(1)(A). *Id.* at 29, 60 (judgments in criminal case). Appellants filed this timely appeal, giving us jurisdiction under 28 U.S.C. § 1291.

## II. DISCUSSION

### A. Whether 18 U.S.C. § 1503 Prohibits Witness Tampering

■ The most complicated issue that appellants raise is whether the United States may prosecute their attempt to influence Kirby's anticipated testimony before the grand

---

2. Appellants argue that Wilt knew quite well that Kirby's new story was true, and set up the tape-recorded interview solely to collect evidence to charge them with obstruction of justice. As noted above in footnote 1, we view the evidence in the light most favorable to the government.

3. An additional count against each defendant was dismissed. J.A. at 29, 60.

jury under 18 U.S.C. § 1503. The Second Circuit has held that the enactment of new witness protection laws in 1982 and 1988 means that the government must now prosecute witness tampering under the new law, 18 U.S.C. § 1512, rather than under § 1503. *See United States v. Masterpol*, 940 F.2d 760, 762 (2d Cir.1991). The other circuits that have addressed the issue have reached the opposite conclusion. *See United States v. Maloney*, 71 F.3d 645, 659 (7th Cir.1995) (noting that Fourth, Ninth, and Eleventh Circuits have held that the omnibus clause of § 1503 continues to cover witness tampering); *United States v. Kenny*, 973 F.2d 339, 342–43 (4th Cir.1992) (same for First, Fifth, Eighth, and Ninth Circuits). *See also United States v. Aguilar*, —— U.S. ——, —— & n. 1, 115 S.Ct. 2357, 2362 & n. 1, 132 L.Ed.2d 520 (1995) (declining to address issue). *Cf. id.* at ——, 115 S.Ct. at 2370 (Scalia, J., dissenting) (arguing that witness tampering can be prosecuted under § 1503). We agree with the majority of these courts that § 1503 continues to prohibit witness tampering.

■ Since its original enactment in 1948, § 1503 has contained both specific prohibitions against particular acts and a general "omnibus clause" providing for the punishment of any person who "corruptly ... influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice." Act of June 25, 1948, ch. 645, 62 Stat. 769–70 (codified as amended at 18 U.S.C. § 1503(a)). *See generally Aguilar*, —— U.S. at —— – ——, 115 S.Ct. at 2361–62. The omnibus clause was intended to ensure that criminals could not circumvent the law's purpose by devising novel and creative schemes that would interfere with the administration of justice but would nonetheless fall outside the scope of § 1503's specific prohibitions. *See United States v. Schaffner*, 715 F.2d 1099, 1103 (6th Cir.1983). The clause has been used to prosecute both crimes that clearly fell within § 1503's more specific provisions and also conduct that those provisions could not reach. *Compare Schaffner*, 715 F.2d at 1103 (omnibus clause prohibits hiding witness even though such conduct is not covered by specific provisions); *United States v. Faudman*, 640 F.2d 20, 23 (6th Cir.1981)

(upholding conviction for conduct not explicitly prohibited in specific provisions because "[u]nless something more than the precise acts listed in the earlier language was intended for inclusion, the 'omnibus' language of § 1503 would be surplusage"), *with United States v. Neiswender*, 590 F.2d 1269, 1272 n. 1 (4th Cir.1979) (upholding conviction under omnibus clause where "[t]he failure to indict under the first clause of [§ 1503] is unexplained"); *Anderson v. United States*, 215 F.2d 84, 87–88 (6th Cir. 1954) (upholding conviction under omnibus clause for offering to alter witnesses' testimony).

The Tacketts do not claim that the omnibus clause never prohibited witness tampering; our prior decisions foreclose such an argument. *See Schaffner*, 715 F.2d at 1103; *Faudman*, 640 F.2d at 23; *Anderson*, 215 F.2d at 87–88. Appellants instead argue that when Congress enacted new protections for witnesses in 1982 and 1988 it intended that such crimes be punished only under the new provisions in 18 U.S.C. §§ 1512 & 1513, rather than under § 1503. We do not believe that Congress intended to preclude the use of the omnibus clause of § 1503 in such prosecutions.

■ As an initial matter, we note that the precise question before us is whether the 1982 and 1988 legislation in effect repealed the omnibus clause as it applies to witness tampering. Before 1982, we had interpreted the clause to prohibit such conduct; if we are now to change that view based on new legislation, it must be that the new law has repealed the old, either explicitly or by implication. This is the framework that Justice Brandeis used in *United States v. Noveck*, 273 U.S. 202, 206, 47 S.Ct. 341, 341–42, 71 L.Ed. 610 (1927), to address the similar argument that the enactment of a criminal statute prohibiting, inter alia, the filing of a false tax return meant that Congress intended that such conduct could no longer be punished under the general perjury statute. *Id.* ("The argument is that [the new statute] includes within its condemnation any one 'who willfully attempts in any manner to defeat or evade the tax imposed by this title'; that perjury to

an income tax return is one manner or method of defeating or evading the tax; and that, since all methods are made punishable under [the new statute], Congress must have intended that perjury in making false returns should no longer be punishable under [the general perjury statute]."). Similarly, in *United States v. Gilliland,* 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed. 598 (1941), the Court construed the question of whether a new statute limited the scope of a pre-existing criminal statute as one of whether the later statute repealed in part the prior one. *Id.* at 95, 61 S.Ct. at 523 (discussing "the contention that the [later Act] operated to repeal [the earlier statute], so far as the latter applied to affidavits, documents, etc."). *See Rodriguez v. United States,* 480 U.S. 522, 524, 107 S.Ct. 1391, 1392–93, 94 L.Ed.2d 533 (1987) (per curiam) (claim that later statute has superseded earlier one must be analyzed as "implicit partial repeal"). In light of these holdings, the question before us is whether the 1982 and 1988 legislation operated to repeal the omnibus clause insofar as it prohibits witness tampering. We review de novo this question of statutory construction. *United States v. Spinelle,* 41 F.3d 1056, 1057 (6th Cir.1994).

 The 1982 and 1988 legislation did not alter the text of the omnibus clause, and appellants have not pointed to anything in the new laws that states that the omnibus clause no longer prohibits witness tampering. Where it is claimed that a statute has been repealed, but there is no explicit repeal,

> the question resolves itself into the more narrow inquiry, whether [the older law] has been repealed by necessary implication. We say, by necessary implication; for it is not sufficient to establish, that subsequent laws cover some or even all of the cases provided for by it; for they may be merely affirmative, or cumulative or auxiliary. But there must be a positive repugnancy between the provisions of the new law, and those of the old; and even then, the old law is repealed by implication, only *pro tanto,* to the extent of the repugnancy.

*Wood v. United States,* 41 U.S. (16 Pet.) 342, 362–63, 10 L.Ed. 987 (1842). More recent jurisprudence qualifies this rule somewhat: if Congress clearly intends to repeal the former law but merely fails to say so explicitly, a court should accede to the legislative intent. *Astoria Fed. Sav. and Loan Ass'n v. Solimino,* 501 U.S. 104, 109, 111 S.Ct. 2166, 2170, 115 L.Ed.2d 96 (1991); *Spinelle,* 41 F.3d at 1059. This qualification does not overrule the *Wood's* statement of the law; it merely recognizes that "in the process of construing a statute the intent of the legislature is always of prime importance." 1A NORMAN J. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTR. § 23.09 (5th ed.1992). *See id.* ("As the legislative intent defines the operation of the statute and divulges the purpose and limitations of the enactment, it may establish or deny a repeal by implication."). It is clear that the provisions of § 1503 and § 1512 are not "repugnant" to each other; they are entirely consistent. *See Spinelle,* 41 F.3d at 1060. We can find an implicit repeal, then, only if Congress has clearly expressed an intent that there be one.

### 1. The 1982 Act

 Congress enacted the Victim and Witness Protection Act of 1982 to protect victims of, and witnesses to, federal crimes from criminals and from the potential callousness of the criminal justice system. *See* Victim and Witness Protection Act of 1982, Pub.L. 97–291 § 2, 96 Stat. 1248, 1248–49 [hereinafter VWPA] (Congressional Findings and Purposes). Congress was concerned that witnesses to federal crimes faced threats, intimidation, and physical harm from the criminals that they helped to convict, *id.* § 2(a)(4), and also that the system itself "simply used [them] as tools to identify and punish offenders." *Id.* § 2(a)(1). Most relevant to the case at bar is section 4(a) of the Act, codified at 18 U.S.C. §§ 1512–15, which creates specific new statutory sections imposing criminal sanctions for harassing, harming, or threatening to harm witnesses or former witnesses and allows courts to issue civil injunctions against such harassment. Congress enacted these new provisions because it believed that § 1503's protections, which are focused on protection of the judicial process, did not provide adequate protection for the lay people involved with that

process. For example, § 1503 applies only when there is a judicial proceeding underway. *Pettibone v. United States,* 148 U.S. 197, 207, 13 S.Ct. 542, 546–47, 37 L.Ed. 419 (1893) (construing predecessor to § 1503); *United States v. Mullins,* 22 F.3d 1365, 1370 (6th Cir.1994). The 1982 Act extended protection to anybody who might provide information in a later proceeding or who had testified in a former proceeding. *See* 18 U.S.C. §§ 1512, 1513. Furthermore, the law is not limited to formal witnesses: the text of the VWPA refers to "persons" rather than "witnesses" or "victims" so as to make clear that it protects anyone who may have knowledge of a crime. *See* S. REP. No. 97–532, at 15 (1982), *reprinted in* 1982 U.S.C.A.A.N. 2515, 2521 ("The scope of the offense should not be limited by concerns about the status of the victim as a person who has testified or will be able to testify in court. Rather, the offense should be addressed to punishing the acts of intimidating or injuring a person because of his knowledge about the commission of a crime."). *See also id.* at 14–15 (noting problems with old law). The 1982 statute was meant to protect people, not just "witnesses" or the criminal justice system.

In keeping with this purpose, the VWPA did not prohibit non-coercive witness tampering: it allowed the prosecution only of persons who used "intimidation or physical force, or threat[s] . . . or misleading conduct" to try to influence a witness. VWPA § 4(a) (codified at 18 U.S.C. § 1512(a) (1982)). Similarly, the other new provisions of the 1982 Act were aimed only at preventing harassment of or threats against witnesses, victims, and informants. *See id.* (codified at 18 U.S.C. §§ 1513, 1514 (1982)). Thus, under the 1982 Act, the Tacketts' attempt to influence Kirby would not even be actionable under any of these sections: they neither threatened him nor attempted to mislead him. *See United States v. King,* 762 F.2d 232, 238 (2d Cir.1985).

With these legislative purposes in mind we now turn to the question of what effect Congress intended the 1982 statute to have on the omnibus clause's scope. The Second Circuit based its conclusion that the clause no longer covers witness tampering on two

pieces of evidence. *United States v. Hernandez,* 730 F.2d 895, 898–99 (2d Cir.1984). First, the VWPA deleted all references to witnesses from § 1503's more specific clauses and caption. *Id.* Second, a Senator stated for the record that § 1503 would no longer provide protection to witnesses. *Id.* at 899. We address each of these in turn.

We do not believe that Congress's deletion of § 1503's specific references to witnesses indicates an intent to withdraw this one class of conduct—witness tampering—from the purview of the omnibus clause. As noted above, Congress believed that the word "witness" was unduly restrictive and intended the new §§ 1512–15 to have a broader scope. In light of the new sections, there was no need to retain the more restrictive language pertaining to witnesses in § 1503. *See* 128 CONG. REC. H26,352 (1982) (statement of Rep. Rodino) (section-by-section analysis of bill, stating that "[t]he amendments delete language from section 1503 pertaining to witness intimidation and retaliation because the conduct dealt with *by that language* is covered in new sections 1512 and 1513") (emphasis added). This deletion of the specific provision regarding witnesses in § 1503 does not necessarily demonstrate an intent to restrict the scope of the omnibus clause of § 1503, the text of which was unaffected by the 1982 law, for Congress may amend one part of a statute without changing the remainder. Nor is the scope of the omnibus clause dependent on that of the specific provisions; it has long been used to prosecute conduct that goes far beyond the scope of § 1503's caption and specific prohibitions. *See Mullins,* 22 F.3d at 1368 (altering subpoenaed documents); *United States v. Sturman,* 951 F.2d 1466, 1479 (6th Cir.1991) (destroying and concealing documents); *United States v. Jeter,* 775 F.2d 670, 676–77 (6th Cir.1985) (obtaining and selling grand jury transcripts), *cert. denied,* 475 U.S. 1142, 106 S.Ct. 1796, 90 L.Ed.2d 341 (1986); *U.S. v. Faudman,* 640 F.2d 20, 21, 23 (6th Cir.1981) (altering subpoenaed documents). Furthermore, if the 1982 Act had removed witness tampering from the scope of the omnibus clause it would essentially have decriminalized noncoercive obstruction of justice involving witnesses. *See King,* 762 F.2d at 238. There

is, of course, absolutely no indication that Congress intended that the VWPA make it legal to obstruct justice. We therefore conclude that the deletion of the word "witness" from § 1503 does not in itself demonstrate any congressional intent to repeal the omnibus clause insofar as it prohibits witness tampering. *Cf. Wood,* 41 U.S. (16 Pet.) at 365 (calling it "impossible . . . to contend that [an earlier statute] is repealed *in toto,* since no subsequent act covers all the cases provided for by it"). To the extent that there is any room for doubt in this conclusion, we are nonetheless quite certain that the change in § 1503 does not demonstrate the clear intent that is necessary to effect an implicit repeal.

The second piece of evidence that the *Hernandez* court cites in support of its holding is even less persuasive. That court noted that Senator Heinz, whom it described as "a prime mover of the bill," had stated on the floor of the Senate that the law as passed "amends section 1503 so it will make no mention of, and provide no protection to, supenaed [sic] witnesses." *Hernandez,* 730 F.2d at 899 (quoting 128 CONG. REC. S26,810 (1982)) (emphasis deleted from *Hernandez* ). The remainder of Senator Heinz's comments, however, make it impossible to take this statement at face value. The senator explicitly stated that the final version of the bill did not contain an omnibus clause because such a provision would be "beyond the legitimate scope of this witness protection measure [and] is probably duplicative of [o]bstruction of justice statues already in the books." 128 CONG. REC. S26,810. This statement would make no sense if Senator Heinz truly believed that the new law excluded witness tampering from the scope of § 1503's omnibus clause: Congress would hardly omit a new provision from the final legislation as duplicative of an existing law and simultaneously repeal the older provision. Also, as

the quoted language suggests, the 1982 Act dealt with protecting witnesses and victims from harassment and injury, rather than with obstruction of justice. *See id.* at 26,-809–10. If Congress believed that obstruction of justice was "beyond the legitimate scope" of the VWPA, it is hard to believe that it intended the new law to have such an impact on the obstruction of justice statute. In the end, even if we were inclined to think that a single Senator's remarks [4] as to the meaning of a bill could indicate a clear Congressional intent to repeal an earlier law by implication, Senator Heinz's remarks are, taken as a whole, far too ambiguous to carry such a heavy burden.

### 2. The 1988 Amendment

■ The Tacketts argue that if the 1982 Act did not serve to repeal the operation of the omnibus clause of § 1503 regarding witnesses then the Anti–Drug Abuse Act of 1988, Pub.L. 100–690, 102 Stat. 4181, did. *See Masterpol,* 940 F.2d at 763. Again, we disagree. The 1988 Act merely added noncoercive witness tampering to § 1512's prohibitions. As with the earlier amendments, it cannot be argued that there is any repugnancy between the two provisions: they are parallel. We can therefore find a repeal only if Congress clearly intended that there be one. Neither the appellants' brief nor the cases cited therein point to any evidence of such an intent, and we can find nothing in the text or the legislative history of the 1988 Act—other than the change to § 1512—that suggests any. In fact, all the evidence points in just the opposite direction. For example, the section-by-section analysis of the 1988 legislation, after discussing the Second Circuit's treatment of just this issue, notes that

---

**4.** Although Senator Heinz was the sponsor of the Senate bill, it was the House bill that ultimately passed both houses. And, as the two versions differed on this precise point, we question the Second Circuit's decision to accord so much weight to Senator Heinz's comments. *Compare Hernandez,* 730 F.2d at 899, *with Weinberger v. Rossi,* 456 U.S. 25, 35, 102 S.Ct. 1510, 1517–18, 71 L.Ed.2d 715 (1982) ("[O]ne isolated remark by a single Senator, ambiguous in meaning when examined in context, is insufficient to establish

the kind of affirmative congressional expression necessary to evidence an intent to abrogate [treaty provisions]."); *Chrysler Corp. v. Brown,* 441 U.S. 281, 311, 99 S.Ct. 1705, 1722–23, 60 L.Ed.2d 208 (1979) ("The remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative history."). *Cf.* 2A NORMAN J. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTR. §§ 48.14, 48.15 (5th ed.1992) (discussing weight to be given to statements of committeemen and sponsors).

[s]ections 7029(c) and (d) are intended, therefore, merely to include in section 1512 the same protection of witnesses from non-coercive influence that was (*and is*) found in section 1503. It would permit prosecution of such conduct in the Second Circuit, where it is not now permitted, and would *allow* such prosecutions in other circuits to be brought under section 1512 rather than under the catch-all provision of section 1503.

134 CONG. REC. S17,369 (1988) (statement of Senator Biden) (emphasis added). *See* 2A NORMAN J. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTR. § 48.14 (5th ed.1992) (noting that statements made in reporting a bill out of committee are accorded the same weight as committee reports). This suggests that the drafters of the 1988 legislation believed both that the omnibus clause of § 1503 still prohibited witness tampering and also that prosecutions under their proposed law would be allowed to proceed under either provision. In any case, this seems to be the sole evidence of Congress's intent in passing the 1988 amendments to § 1512, and it certainly does not constitute clear evidence of an intent to effect any change to the scope of § 1503. As noted above, the overlap between the two provisions by itself demonstrates nothing. *Wood,* 41 U.S. (16 Pet.) at 362–63. We therefore conclude that the omnibus clause continues to prohibit witness tampering.

## B. Whether the Tacketts' Conduct Constituted an Obstruction of Justice

Appellants next argue that their convictions under § 1503 must be reversed because the evidence showed that by the time of their attempts to influence Kirby the government had decided not to have him testify before the grand jury and was instead using him to gather evidence to prosecute the Tacketts for obstructing justice. This argument comprises two separate claims. The first claim is that at the time of the taped conversation Kirby was acting as part of an ATF, not a grand jury, investigation. *See United States v. Ryan,* 455 F.2d 728, 734–35 (9th Cir.1971) (overturning § 1503 conviction where defendant was not subject of grand jury investiga-

tion); *Mullins,* 22 F.3d at 1370 ("The issue in *Ryan,* we believe, was whether the investigation was being conducted by the IRS, in which case § 1503 did not apply, or by the grand jury."). The second claim is that we must reverse the conviction because, by the time of the taped conversations, the government had decided not to have Kirby testify before the grand jury. *See United States v. Bashaw,* 982 F.2d 168, 172 (6th Cir.1992) (reversing conviction for endeavoring to intimidate jurors because "the jurors' duty as far as [the case in question] was over").

■■■ The first claim fails on its facts. Although the Tacketts suggest that the government ordered Kirby to contact them in order to trick them into asking him to perjure himself before the grand jury, ATF agent Wilt testified that he had arranged the meeting in order to determine whether Kirby's most recent version of the events surrounding the date on the ATF Form 4473 was truthful. J.A. at 182. Because the government had convened the grand jury specifically to investigate "the accuracy of this form and the circumstances surrounding it," *id.* at 180, Kirby and Wilt were acting in furtherance of the grand jury investigation.

■■■ The second claim fails on the law. Although the omnibus clause of § 1503 requires that the prosecution prove that a defendant's actions were intended to obstruct an actual judicial proceeding, *Mullins,* 22 F.3d at 1370, the government need not prove that the actions had their intended effect. *Osborn v. United States,* 385 U.S. 323, 333, 87 S.Ct. 429, 434–35, 17 L.Ed.2d 394 (1966); *United States v. Atkin,* 107 F.3d 1213, 1218 (6th Cir.1997). Furthermore, an endeavor to obstruct justice violates the law even if, unbeknownst to the defendant, the plan is doomed to failure from the start. *Osborn,* 385 U.S. at 333, 87 S.Ct. at 434–35; *United States v. Mitchell,* 514 F.2d 758, 761–62 (6th Cir.1975). In *Osborn,* for example, the defendant hoped to bribe a juror in an upcoming criminal trial. 385 U.S. at 324, 87 S.Ct. at 430. Unfortunately for Osborn, the man he hired to make the arrangements was—like Kirby—already cooperating with federal investigators. *Id.* at 325, 87 S.Ct. at 430–31.

Osborn argued that since the intermediary never actually approached the prospective juror and, being a double agent, never even intended to, "any endeavor on [Osborn's] part was impossible of accomplishment." *Id.* at 332, 87 S.Ct. at 434. The Court rejected the argument because the omnibus clause "is not directed at success in corrupting a juror, but at the endeavor to do so."[5] *Id.* at 333, 87 S.Ct. at 435 (citation and internal quotation marks omitted). *Accord Mitchell,* 514 F.2d at 762. The Tacketts, knowing that the grand jury was investigating the events surrounding the ATF form, tried to persuade Kirby to present false testimony, and they were properly convicted for endeavoring to obstruct justice.[6]

## C. Sufficiency of Evidence as to Intent to Falsify the ATF Form 4473

 Grayson Tackett argues that there was insufficient evidence for the jury to find that he knew that the statements he made on the ATF Form 4473 were false. We will reverse a jury verdict on such grounds only if no rational juror could have found that the government had proved a necessary element of the crime beyond a reasonable doubt. *Bashaw,* 982 F.2d at 171.

### 1. The False Date

 Tackett claims that the government presented insufficient evidence that he knew, at the time he assisted Kirby in completing the Form 4473, that the December 16 date was false, because he never explicitly stated to Kirby that he was asking him to falsify the date. Direct evidence of bad intent is unnecessary. Kirby testified that he twice told Tackett that the gun had been purchased early in 1991 and that Tackett responded first by saying that he believed it to have been in December of that year, then with "put down 12–16, that's a good date." J.A. at 249. Kirby's testimony regarding the transaction could itself support a reasonable inference that the two tacitly agreed to put down a false date. *Id.* at 249–50 (Tackett "was kindly insistent on [the December 16 date] and I didn't see any problem with it because I didn't have any idea of any significance to the date, so that's what it was."). Moreover, there was ample evidence that Grayson Tackett was making a concerted effort to sabotage the case against his son by introducing false evidence into the investigation. The government produced evidence that Tackett had asked Kirby to testify falsely as to the date of purchase and read for the jury Tackett's own testimony at his son's trial that he had gone to see Kirby with "one thing on [his] mind ... to help [his] son." *Id.* at 424. In light of these other ways in which Tackett had tried to help his son escape punishment in his criminal trial, the jury could reasonably have inferred that his visit to Kirby was made to convince him to put what Tackett knew to be a false date on

---

**5.** The Supreme Court has recently held that the "endeavor must have the natural and probable effect of interfering with the due administration of justice." *United States v. Aguilar,* —— U.S. ——, ——, 115 S.Ct. 2357, 2362, 132 L.Ed.2d 520 (1995) (citation and internal quotation marks omitted). Appellants have not argued that this requirement renders their convictions invalid, and we do not think that it does. This requirement serves merely to ensure that defendants are not convicted for making false statements unless they have some notice that those falsehoods might have some effect on a judicial proceeding. *Id.* at ——, 115 S.Ct. at 2363; *Atkin,* 107 F.3d at 1219. This requirement is clearly met in this case.

**6.** The Tacketts' reliance on *United States v. Simmons,* 591 F.2d 206, 210 (3d Cir.1979), for the proposition that their convictions must be overturned because, as the time of their meetings with Kirby, "there was no presently contemplated presentation of evidence by Kirby before the grand jury" is misplaced. *See* Appellants' Br. at 24. *Simmons* stated that the correct inquiry was "whether the subpoena *is issued* in furtherance of an actual grand jury investigation, i.e., to secure a presently contemplated presentation of evidence before the grand jury." 591 F.2d at 208–09 (emphasis added). *See United States v. Nelson,* 852 F.2d 706, 711 (3d Cir.1988) (question is "whether the requisite present intention existed at the time the subpoena was issued"). There is no question that when the subpoena issued the government intended that Kirby would actually testify. *See* J.A. at 180. *Cf.* Appellants' Br. at 24. Furthermore, the quoted language makes it clear that the "presently contemplated" language serves as a proxy for the real question, which is whether the subpoena was issued in furtherance of the grand jury's, rather than a police, investigation.

the 4473 form.[7]

### 2. Who Purchased the Gun

■ Grayson Tackett also claims that when he filled out the form he did not know that putting his name on it was dishonest, because he was the real purchaser and Brian had merely been paying for and picking up the gun. Again, we will not upset a jury verdict supported by reasonable inferences. The jury knew that Tackett had a strong motive to lie on the form, had in fact put a false date on the form, and had then tried to induce Kirby to lie to the grand jury as to the whole transaction. This is ample evidence to infer scienter.

Tackett's attempt to rely on *United States v. Isaacs,* 539 F.2d 686 (9th Cir.1976), is misplaced. Isaacs had replied "no" to a question on an ATF Form 4473 that asked him whether he was under indictment. *Id.* at 687. In fact, he had recently been charged by information. The court overturned his conviction under a Federal Rule of Criminal Procedure 52(b) clear error standard for making a false statement because his answer was undisputably "literally true": Isaacs was not under an indictment. *Id.* at 688 & n. 1. Here, on the other hand, the evidence suggests that Brian, not Grayson, Tackett was the true purchaser, and *Isaacs* is inapposite.

### D. Sentencing

■ Finally, appellants contest the district court's use of U.S.S.G. § 2J1.2(b)(2) to enhance their sentence. Under that provision, an offense that results in a "substantial interference with the administration of justice" warrants a three-level increase, in this case moving both defendants from offense level 12 to level 15. J.A. at 47, 76. The enhancement applies if the defendants cause an "unnecessary expenditure of substantial governmental or court resources." U.S.S.G. § 2J1.2(b)(2) commentary, applic. note 1. The Tacketts argue that because the district court failed to make an independent finding that any government resources had been wasted, we should either reduce their sentences or remand for resentencing. We agree that a remand is necessary.

The presentence report (PSR) prepared for each defendant stated that the Tacketts delayed the investigation of their son and caused the government to waste time and effort. J.A. at 47, 76. It additionally stated that "[t]he defendant's actions also necessitated a separate investigation which led to additional prosecutions." *Id.* At sentencing, however, defense counsel argued that his clients' conduct had not, in fact, had this effect at all. *Id.* at 589, 593. To further complicate matters, the government argued at sentencing that § 2J1.2(b)(2) was not the correct guideline, but that § 2J1.2(c) and, by cross reference, § 2X3.1, should apply to increase defendants' total offense level to 18. *Id.* at 586. After listening to these factual and legal arguments, the district court sentenced both defendants as recommended in the respective PSRs without ruling on the government's legal argument or making any findings of fact. *Id.* at 596–99.

■ Federal Rule of Criminal Procedure 32(c)(1) states that, "[a]t the sentencing hearing .... [f]or each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing." This circuit requires "literal compliance" with this provision. *United States v. Fry,* 831 F.2d 664, 667 (6th Cir.1987).[8] This strict requirement helps to ensure that defendants are sentenced on the

---

**7.** Tackett makes much of an inconsistency in Kirby's testimony as to the real date of purchase. Defense counsel cross-examined Kirby extensively as to this error, but, in light of the verdict, apparently failed to impeach his credibility. *See* J.A. at 387. Credibility questions are for the jury, not for us; in any case, a mistake of what might have been only a few days, at a trial more than four years after the event in question, certainly does not suggest that the rest of Kirby's testimony should be ignored.

**8.** *Fry* and several of the other cases cited discuss the predecessor of the current Rule 32(c)(1), the former Rule 32(c)(3)(D). The provisions are identical. FED. R.CRIM. P. 32(c) Advisory Committee Notes (1994 Amendments) ("Subdivision (c) ... makes no major changes in current practice.... Subdivision (c)(1) (formerly subdivision (c)(3)(d)) .... ").

basis of accurate information and provides a clear record for appellate courts, prison officials, and administrative agencies who may later be involved in the case. *Fry,* 831 F.2d at 667. *See United States v. McMeen,* 49 F.3d 225, 226 (6th Cir.1995) ("When a contested sentencing enhancement factor appears in the probation report and is not proved by the government at the hearing, the court must insure that the factor is otherwise proved by reliable evidence before using it to increase the sentence."). If the sentencing court fails to make these factual findings, we must remand for resentencing. *United States v. Edgecomb,* 910 F.2d 1309, 1313 (6th Cir.1990).

The district court made no independent findings regarding the basis for the obstruction of justice enhancement. The court listened to counsels' arguments as to the enhancement, J.A. at 586–87, 589–90, 593 and then pronounced the sentences as calculated in the PSR, *id.* at 596–598. The district judge was completely silent when imposing sentence as to the enhancement: he addressed neither the hotly contested factual question of how much wasted time and effort defendants' conduct had caused nor the issue of which guideline should apply. The judgment in each case states simply that "[t]he court adopts the factual findings and guideline applications in the presentence report." *Id.* at 35, 66. This is a far cry from the making of a finding for each matter controverted, as the plain language of Rule 32 requires. *See United States v. Mandell,* 905 F.2d 970, 974 (6th Cir.1990) (rejecting claim that Rule 32 is satisfied where it is plain from the district court's sentence that it adopted findings in PSR, because express findings are needed "to ensure that the defendant's concerns over disputed allegations in the presentence report have been considered by the district court *whose reasoning is shown on the record* for both the benefit of the defendant and for us on review") (emphasis added) (citation omitted). From the record before us, it is impossible to know whether the district court made an independent evaluation of the evidence. We therefore remand the cases for resentencing.

## CONCLUSION

For the reasons discussed above, we AFFIRM the Tacketts' convictions but VACATE their sentences and REMAND both cases to the district court for resentencing in accordance with Rule 32(c).