For the foregoing reasons, I dissent.

---

first by objecting to the presentence investigation report and then in his direct appeal. His failure to preserve these issues has now resulted in a procedural default, and it is improper for this Court to do as the majority has done here and consider his defaulted arguments on appeal.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0101P (6th Cir.)
File Name: 00a0101p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          *v.*                                    No. 98-3786

MANSOUR W. SAIKALY,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 92-00200—Sam H. Bell, District Judge.

Submitted: August 6, 1999

Decided and Filed: March 23, 2000

Before: BATCHELDER and COLE, Circuit Judges;
          MARBLEY, District Judge.

---

*   The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

———————————

**COUNSEL**

**ON BRIEF:**    Dennis P. Levin, Cleveland, Ohio, for Appellant.   Samuel A. Yannucci, ASSISTANT UNITED STATES ATTORNEY, Akron, Ohio, for Appellee.

MARBLEY, D. J., delivered the opinion of the court, in which COLE, J., joined.   BATCHELDER, J. (pp. 18-20), delivered a separate opinion concurring in part and dissenting in part.

———————————

**OPINION**

———————————

ALGENON L. MARBLEY, District Judge.   Defendant-Appellant Mansour W. Saikaly appeals the 240-month sentence imposed by the district court upon resentencing following the vacation of his conviction for using or carrying a firearm in relation to a drug trafficking crime pursuant to 18 U.S.C. § 924(c) and the vacation of his designation as an armed career criminal pursuant to 18 U.S.C. § 924(e). Specifically, Saikaly objects to the district court's: 1) enhancement of his sentence pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of a firearm; 2) failure to consider his objection to the amount of drugs for which he was responsible; and 3) failure to consider his objection to his criminal history category and the determination that he was a criminal history category V rather than a IV.   Saikaly also objects to a typographical error on the judgment and commitment order filed after the resentencing.   For the reasons that follow, we **AFFIRM** in part and **REVERSE** in part, and **REMAND** for further proceedings consistent with this opinion.

his counsel had been ineffective in failing to object to the pre-sentence report's determination that he was an armed career offender, but was denied relief on the remaining claims.   The § 2255 motion currently before us on appeal followed.   In it, Saikaly challenges the quantity of drugs attributed to him for purposes of sentencing and the criminal history category established pursuant to the Sentencing Guidelines.

We will not review on appeal claims presented in § 2255 habeas proceedings that were not presented previously on direct appeal.   *See Chandler v. Jones*, 813 F.2d 773, 777 (6th Cir. 1987) ("It is a well-established principle of appellate review that appellate courts do not address claims not properly presented below . . . .   [T]his court relie[s] on this principle in rejecting attempts by habeas petitioners to assert new claims on appeal not presented in their petition or proceedings below."). *See also United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam) (holding that non-constitutional claims that could have been raised on direct appeal may not be asserted in a collateral proceeding).   The issues regarding the quantity of drugs attributed to Saikaly and the guideline calculation of his criminal history category were cognizable on direct appeal.   Nonetheless, neither in his direct appeal nor in his original or supplemental § 2255 motions did Saikaly ever assign error to the district court's decision concerning those matters.   In fact, Saikaly first raised the issue *after* the government filed its response to Saikaly's §2255 petition.   Because Saikaly failed to preserve the issues for review, they are not properly before this Court.[1]

———————————

   [1]The majority opinion inaccurately claims "the Dissent's conclusion is that these issues were not contained in Saikaly's §2255 habeas petition and therefore have not been preserved for appellate review."   This is *not* the basis for this dissenting opinion.   It is the majority's attempt to characterize Saikaly's challenges as being directed solely to "the 'new' presentence report" to avoid finding a procedural default that is the basis for this dissent.   Saikaly's original sentence was based, *inter alia*, upon two factual findings:  (1) that the amount of cocaine allocated to him fell within the range of 5 to 15 kilograms, and (2) that his criminal history placed him at Category V.   Therefore, if Saikaly disputed the accuracy of either of those findings, it was incumbent upon him to challenge them

**CONCURRING IN PART, DISSENTING IN PART**

ALICE M. BATCHELDER, concurring in part, dissenting in part. I concur in part III.A of the majority's holding, affirming the district court's enhancement of Saikaly's sentence pursuant to U.S.S.G. § 2D1.1(b)(1). For the reasons that follow, however, I dissent from parts III.B and III.C, which remand to the district court the issues concerning the quantity of drugs attributed to Saikaly and his criminal history category.

As the majority states, Saikaly raised "various challenges" to his conviction on direct appeal in 1995. To be more precise, Saikaly assigned as error in the district court: (1) the failure to suppress evidence seized in violation of the "knock and announce" rule; (2) the violation of his Sixth Amendment right to a speedy trial; (3) the failure to give a multiple conspiracy jury instruction; (4) insufficiency of the evidence to support conviction on the conspiracy charge; (5) insufficiency of the evidence to support conviction on the firearm charges; and (6) the admission of certain physical evidence seized in New York when he was arrested on unrelated charges. *See United States v. Ross*, 53 F.3d 332, 1995 WL 253183 (6th Cir. April 27, 1995) (unpublished). After his unsuccessful appeal, Saikaly filed a § 2255 motion, followed by a supplemental § 2255 motion, in which he claimed that: (1) his § 924(c) conviction was invalid under *Bailey;* (2) he was sentenced improperly as an armed career criminal under § 924(e)(2); (3) evidence seized in New York during an unrelated arrest was improperly admitted at trial; and (4) his counsel was ineffective at both the trial and sentencing stages because counsel failed to move for suppression of evidence seized in New York in violation of his Fourth Amendment rights and failed to object to the determination in the pre-sentence report that Saikaly should be sentenced as an armed career offender. Saikaly prevailed in the district court on the *Bailey* claim and on the claim that

**I.**

In May 1992, Saikaly was arrested following a year-long investigation in Akron, Ohio, targeting large-scale drug dealers James Dillehay, Jerome Gordon and Anthony Johnson. Saikaly allegedly ran a crack house on the south side of Akron and purchased cocaine from Gordon and Johnson on numerous occasions. Saikaly met Johnson through David Shepherd, who also ran a "crack house" on the south side of Akron. Initially, Saikaly and Shepherd were friendly, but a rift developed. According to the presentence investigation report, Saikaly learned that Shepherd intended to rob him. To protect his narcotics transactions, Saikaly allegedly instructed his girlfriend, Lisa Gadsen, to purchase a Glock 9mm semi-automatic pistol for him.[1] In a wiretapped phone conversation, Johnson told Shepherd that Saikaly had shown him the Glock.

On May 1, 1992, Saikaly and two individuals were stopped in New York City in a black Blazer owned by Saikaly's brother, Maurice. The individuals were stopped because the Blazer matched a description of a vehicle involved in a robbery. The officers searched the vehicle and found Gadsen's loaded Glock 9mm in the locked glove compartment, ammunition, and $22,000 in cash. Saikaly and his companions were arrested, but those charges were dismissed and Saikaly returned to Akron.

On May 22, 1992, Saikaly was again arrested at his residence in Akron and ultimately charged, along with twelve co-defendants, in a ten-count superseding indictment[2] for conspiracy to distribute and possess with the intent to

---

[1] Records indicated that Gadsen purchased the Glock as well as a Winchester .12 gauge shotgun (seized from Saikaly's bedroom when he was arrested) and a Ruger 9mm semi-automatic pistol (seized in a raid of the crack house thought to be run by Saikaly).

[2] The original indictment charged the eighteen defendants with conspiracy to distribute and possess with intent to distribute cocaine.

distribute cocaine, and various other drug and firearm charges. Saikaly was named in Count 1 (conspiracy), Count 7 (using or carrying a firearm in connection with a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)), and Counts 8 and 9 (felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1)). Co-defendants Gordon and Johnson entered pleas of guilty and served as government witnesses at trial, providing much of the testimony against the other defendants. Saikaly presented four witnesses on his behalf – his parents and his siblings. Saikaly's brother, Maurice, testified that he received the Winchester shotgun from Lisa Gadsen as payment for electronics work he had done for her, that Gadsen owned the Glock, and that he had allowed Gadsen to drive his Blazer. Maurice also testified that the $22,000 found in the Blazer belonged to him. Saikaly's mother testified that she found the Winchester shotgun in the garage where Maurice conducted his electronics business, and that she moved it to Saikaly's bedroom for safekeeping.

The jury was not persuaded by Saikaly's defenses to the firearms charges and  convicted him on all counts. The district court sentenced Saikaly to a total of 360 months imprisonment (300 months on Counts 1, 8 and 9 and 60 months consecutive on Count 7). The district court found that Saikaly was an armed career criminal pursuant to U.S.S.G. § 4B1.4 and assigned him criminal history category V. In addition, the district court found that Saikaly was responsible for more than 5 but less than 15 kilograms of cocaine. Saikaly appealed his conviction, raising various challenges to the search and seizure of his home, the sufficiency of evidence, and the admission of evidence stemming from his arrest in New York. He also claimed a violation of the Speedy Trial Act. This court affirmed Saikaly's conviction, s*ee United States v. Ross*, 53 F.3d 332 (6th Cir. 1995), and the United States Supreme Court denied certiorari.

Saikaly then filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, raising four issues as construed by the district court: 1) Saikaly's § 924(c)

### D.  Typographical Error

Saikaly complains that although the district court vacated the § 924(c) conviction, the second judgment and commitment order continues to state that Saikaly was found guilty of that offense. Saikaly is correct, and the government acknowledges the error as well. Accordingly, upon remand, the district court should correct the judgment and commitment order pursuant to Federal Rule of Criminal Procedure 36, which allows for the correction of such clerical errors.

### IV.

For the foregoing reasons, we **AFFIRM** in part and **REVERSE** in part and **REMAND** for further proceedings in accordance with this opinion.

The sentencing which we are speaking is the one which took place originally. The point of our hearing today is to reduce that sentence by virtue of a change in the law since the time the sentence was imposed, which is obviously to Mr. Saikaly's benefit. I don't see this, unless you have some thoughts, as being a total resentencing with a sense of recommitment to the figures here.

In addition to that, it does not seem to me that the recollection that I have of the testimony does not establish, even by a preponderance of the evidence, that the January 29th date is the beginning of this, from the standpoint of the guideline configuration.

For these reasons, I think the category V is applicable here.

J.A. at 429-30.

This Court finds that Saikaly's criminal history category was at issue. For the reasons set out in the previous section, the district court should have fully considered Saikaly's argument. The district court gave a limited reason for why Saikaly was a criminal history category V: that it did not believe that January 29, 1992 was the date Saikaly entered the conspiracy. However, the district court failed to make a specific finding of the date that Saikaly entered the conspiracy, or commenced the instant offense.[10] This case is **REMANDED** for consideration of this issue.

---

[10] At resentencing, the government stated that evidence indicated that Saikaly entered the conspiracy in 1991. That would still place Saikaly's 1985 and 1986 juvenile convictions beyond the five-year limit in criminal history computation.

The government was correct in stating that an overt act set out in the indictment is not the proper starting point for Saikaly's offense; rather, the guidelines provide that the term "commencement of the instant offense" includes any relevant conduct. *See* U.S.S.G. § 4A1.2 cmt. n.8. The district court failed to determine when Saikaly's relevant conduct commenced.

conviction was not valid after *Bailey v. United States,* 516 U.S. 137 (1995); 2) Saikaly's Fourth Amendment rights had been violated in the seizure of evidence used against him at trial; 3) the evidence obtained from the New York arrest should not have been admitted and used against him; and 4) Saikaly was denied effective assistance of counsel at trial and on appeal. The district court vacated Saikaly's § 924(c) conviction, finding that there was no evidence that he "used" or "carried" a firearm as defined by *Bailey*. In addition, the district court agreed with Saikaly on one of his specific claims regarding ineffective assistance of counsel: that his trial counsel failed to object to his classification as an armed career criminal in the presentence report because two of the three underlying offenses did not qualify as serious drug offenses or as violent felonies under the statute. The district court concluded:

> Mr. Saikaly's petition for relief is granted with respect to his § 924(c) claim and his request for resentencing based on the court's utilization of an erroneous presentence report. In all other regards, Mr. Saikaly's petition is denied.

> The Probation Department is hereby ordered to create a new presentence form for Mr. Saikaly. Mr. Saikaly's new sentencing hearing will be scheduled presently.

The new presentence report ordered by the district court set forth the following findings and/or recommendations:

1)  that a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of a firearm should be applied;

2)  that the amount of cocaine the government attributed to Saikaly was more than 5 but less than 15 kilograms, resulting in a base offense level of 32; however, the report stated that the amount of cocaine Saikaly attributed to himself was the total amount listed in the overt acts set out in the indictment, or 2.5567

kilograms, resulting in a base offense level of 28 (for at least 2 but less than 3.5 kilograms); and

3)    that Saikaly was a criminal history category IV.

Saikaly filed various objections to the new presentence report and also filed a detailed memorandum in support of his objections.    Saikaly objected to the following: the enhancement of his sentence for possession of a firearm; the amount of cocaine attributed to him; the classification as an armed career criminal; the failure to decrease his sentence for acceptance of responsibility; the criminal history category over-represented the seriousness of his past; the two-level enhancement for an aggravating role rather than a two-level reduction for a mitigating role; and the imposition of a fine.

At sentencing, the district court noted Saikaly's objections, stating:

> I read your brief and I think it's marvelously well done, but, as I indicated, the purpose of the court now is not to reconfigure the sentence. The purpose of the court now is to resentence in conjunction with the report. And in my opinion that does not open the whole question of sentencing, the quantity of drugs, et cetera, which I know to be a position that you probably don't agree with.

The district court determined that Saikaly's behavior warranted the two-level enhancement for possession of a firearm. The district court briefly noted that Saikaly was a criminal history category V, vacated the § 924(c) conviction and determined that Saikaly was not an armed career criminal. The district court resentenced Saikaly to 240 months imprisonment. This timely appeal followed.

## II.

"A court's factual findings in relation to the application of Sentencing Guidelines are subject to a deferential 'clearly erroneous' standard of review. Legal conclusions regarding the Guidelines, however, are reviewed de novo." *United*

conspiracy, were used as the starting point in order to count prior juvenile arrests.[9]
Over the years the relevant conduct issues said that, well, if there is any evidence that a person hasn't been in a conspiracy since its beginning, then in essence the time limits vary according to when it can be determined that's when the person actually entered.
When I did the reconsideration, I went to the first overt act which appeared in the indictment and found that that occurred on January 29th, 1992. On the basis of that, I computed the juvenile arrests. And since juvenile convictions only carry a five year rather than a 10 year or 15 year, as the adults do, some of the early juvenile arrests that have been configured into the original report did not get points in the revised ruling. That difference is what created a four rather than a five.

J.A. at 428 (footnote added).

The government disagreed, stating that the issue was not before the court. The government also stated:

> I would also indicate that using an overt act as the starting point because, as the court is aware, overt acts are something that the government need not allege.
> The fact that the first overt act occurred in 1992 does not square with the testimony that was presented in this case, which indicated that Mr. Saikaly was dealing with Jerome Gordon and Anthony Johnson during 1991.

J.A. at 429.

The district court apparently agreed with the government, stating:

---

[9]The guidelines provide that a criminal history point is added for a juvenile sentence imposed within five years of the defendant's commencement of the instant offense. *See* U.S.S.G. § 4A1.2(d). Here, the conspiracy allegedly started in 1988, and Saikaly's juvenile convictions at issue were in 1985 and 1986.

failure to make such a ruling, is indeed properly before this Court.

The Court finds that the actual issues raised in subparts III.B and C are properly before it. Accordingly, this case is **REMANDED** to the district court for consideration of the issue of quantity of drugs attributable to Saikaly.

### C. Criminal History Category [7]

Saikaly argues that the district court erred by determining that he was a criminal history category V, rather than a criminal history category IV, as recommended in the second presentence report.

At the outset, there appears to be a discrepancy in the district court's determination. At the sentencing hearing, the district court stated that Saikaly was a criminal history category V; however, the second judgment and commitment order states that Saikaly is a criminal history category IV. The district court did not rely on the guideline range as determined by the offense level and the criminal history category in sentencing because a statutory mandatory minimum was applicable.[8]   Thus, it is uncertain which criminal history category Saikaly was assigned.

At resentencing, the district court noted that there was uncertainty as to Saikaly's criminal history category. The probation officer explained why he had determined that Saikaly was a criminal history IV rather than V:

Some of [Saikaly's] juvenile arrests had been applied because of 1988, which was the beginning of the

---

[7]Under the same rationale, the issues raised in subpart III.C are also properly before this Court.

[8]More than 5 kilograms of cocaine requires 20 year mandatory minimum. *See* 21 U.S.C. § 841(b)(1)(A)(ii).

*States v. Latouf,* 132 F.3d 320, 331 (6th Cir. 1997), *cert. denied,* 118 S. Ct. 1572 (1998).

### III.

### A.  Enhancement for Possession of a Firearm

The United States Sentencing Guidelines permit a sentencing enhancement for possession of a firearm during a drug-trafficking crime. *See* U.S.S.G. § 2D1.1(b)(1). This enhancement does not apply when a defendant is convicted and sentenced for violating 18 U.S.C. § 924(c) because to do so would constitute impermissible double counting. *See* U.S.S.G. § 2K2.4 cmt. n.2. In this Circuit, it is well established that a district court has the authority to apply the § 2D1.1(b)(1) enhancement when a defendant is resentenced after the vacation of a § 924(c) conviction. *See Pasquarille v. United States,* 130 F.3d 1220, 1222 (6th Cir. 1997) (stating that "§ 2255 gives the court jurisdiction and authority to reevaluate the entire aggregate sentence to ensure that the defendant receives the appropriate sentence on the remaining count"). In addition, this Court has held that the application of the enhancement does not violate the Double Jeopardy Clause. *See id.* at 1222-23.

To obtain an enhancement pursuant to § 2D1.1(b)(1), the government must show by a preponderance of the evidence that the defendant possessed the firearm during the drug-trafficking offense. *See United States v. Sanchez,* 928 F.2d 1450, 1460 (6th Cir. 1991). Once the government satisfies its initial burden of showing that a weapon was present, however, the burden shifts to the defendant to show that it was clearly improbable that the weapon was connected to the offense. *See United States v. McGhee,* 882 F.2d 1095, 1097-98 (6th Cir. 1989). As the commentary to U.S.S.G. § 2D1.1 explains:

The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable

that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

U.S.S.G. § 2D1.1 cmt. n.3.

Here, Saikaly argues that there was no evidence that he possessed a firearm during the drug-trafficking offense. Saikaly's argument wholly lacks merit. The evidence indicated that Saikaly obtained the Glock 9mm to protect his drug-trafficking activities and that he showed the Glock to Johnson, one of his drug sources. In addition, the taped conversations from Johnson's wiretapped telephone indicates that Johnson told Shepard that Saikaly was carrying the Glock in a shoulder holster. Moreover, the Glock was found – along with $22,000 in cash – in the vehicle Saikaly was driving in New York City. Finally, a loaded Winchester shotgun was seized from Saikaly's bedroom when he was arrested. This evidence was more than enough to support the district court's conclusion that Saikaly possessed a firearm.

Saikaly argues that he presented evidence "explaining" the presence of the firearms. The evidence that Saikaly presented was that Lisa Gadsen owned the firearms. Saikaly's brother testified that Gadsen had driven the Blazer, and that Gadsen put the Glock in the glove compartment. Saikaly's brother further testified that Gadsen gave the Winchester to him, which was followed by Saikaly's mother's testimony that *she* put the Winchester in Saikaly's room. As the district court stated at the resentencing hearing, "with all due respect, I don't think anybody in the courtroom believed what [Saikaly's brother and mother] had to say."

Saikaly also seems to rely on the fact that he did not own the firearms. This is irrelevant. The issue is not ownership, but possession of the firearms. Here, a preponderance of the evidence indicated that Saikaly possessed the firearms during the drug-trafficking conspiracy. Saikaly failed to show that the firearms were not connected to the offense.

Court to make that determination; the issue is whether the district court erred by failing to consider Saikaly's objection. We find that it did.

The Dissent would find that the quantity of drugs attributed to Saikaly and the criminal history category assigned to him are not properly before this Court. The basis of the Dissent's conclusion is that these issues were not contained in Saikaly's § 2255 habeas petition and therefore have not been preserved for appellate review. The Dissent has mischaracterized the issues that are presently before this Court. Saikaly's appeal does not arise from a § 2255 habeas motion; rather, it arises from the sentence the district court imposed pursuant to the "new" presentence report. Saikaly appeals the district court's failure to consider objections to the new presentence report. The Dissent's assertion would be correct *if* Saikaly's appeal before this Court were based on his § 2255 habeas petition, *see Chandler v. Jones*, 813 F.2d 773, 777 (6th Cir. 1987), but this is not the case.

Here, following Saikaly's successful § 2255 motion, the district court ordered the Probation Department to prepare a "new" presentence report. The new presentence report differed in substance from the first report in that, for example, for the first time 2.5587 kilograms of cocaine were attributed to Saikaly. *See* Part I. After the new report was filed, Saikaly timely filed his objections. Specifically, Saikaly objected to the quantity of drugs that were attributed to him and to the criminal history category he was assigned. The district court refused to consider these timely filed objections when it sentenced Saikaly, thereby disregarding the mandate of Federal Rule of Criminal Procedure 32(c)(1). Saikaly's direct appeal followed.

Once the district court ordered the creation of a new presentencing report, it was obligated to rule on Saikaly's "unresolved objections" and make a "written record of such findings and determinations." Fed. R. Crim. P. 32(c)(1); *see also United States v. Tackett*, 113 F.3d 603, 613-14 (6th Cir. 1997). Saikaly's appeal, which is based on the district court's

With respect to a district court's obligations at sentencing, Federal Rule of Criminal Procedure 32(c)(1) requires a district court to make a factual finding for each contested factor of the presentence report. This circuit requires "literal compliance" with the rule, because such factual findings help "to ensure that defendants are sentenced based on accurate information and provide[ ] a clear record for appellate courts, prison officials and administrative agencies who may later be involved in the case." *United States v. Tackett,* 113 F.3d 603, 613-14 (6th Cir. 1997).[6]

The district court should have considered Saikaly's objections to the second, "new" presentence report. The district court ordered the preparation of a new report without limitation, and the new report set forth a statement regarding the amount of drugs that differed from the original presentence report. Saikaly filed detailed objections to the second presentence report prior to the resentencing hearing. Given the importance of the presentence report, district courts should address any objections that a defendant, or that the government might have, to a "new" report that contains materially different information than the first presentencing report even if these objections come during resentencing. This reasoning corresponds with this circuit's de novo approach to resentencing following remand after direct appeal.

Saikaly may not prevail on the merits of his argument, because it seems fairly obvious that Saikaly could reasonably foresee that more than five kilograms of cocaine were attributable to the conspiracy. Nonetheless, it is not for this

---

[6]By analogy, Fed. R. Crim. P. 32(c)(3)(C), which requires district courts to allow a defendant the right to allocution at sentencing, has been held *not* to apply at § 2255 resentencings. *See Pasquarille,* 130 F.3d at 1223 (stating that "[t]here is nothing in § 2255 which provides that a defendant has either an absolute right to be present or a right of allocution [at resentencing]"). There is, however, a distinguishing factor between this case and the *Pasquarille* case: the *Pasquarille* court noted that "there are no disputed facts in this case." *Id.* Here, we certainly have disputed facts, which requires a different result.

---

The district court properly applied the § 2D1.1(b)(1) enhancement.

### B.  Quantity of Drugs

Saikaly argues that the district court erred by failing to consider his objections to the second presentence investigation report regarding the amount of drugs attributed to him. The government counters that Saikaly waived this issue by failing to raise it on direct appeal and in his § 2255 motion.

The first presentence investigation report indicated that Saikaly was responsible for more than 5 but less than 15 kilograms of cocaine. Saikaly did not make a definitive objection to that finding. The district court, however, construed one of his objections as pertaining to the amount of drugs and stated that even if Saikaly was not personally responsible for more than 5 kilograms of cocaine, "he still is liable for quantities based on those which were reasonably foreseeable to be involved in by the members of the conspiracy itself." This was the extent of the district court's findings regarding the amount of drugs.[3]

In the second presentence investigation report, prepared after Saikaly's successful § 2255 motion, the probation officer again stated that the government's position was that Saikaly was responsible for more than 5 but less than 15 kilograms of cocaine. In that report, however, the probation officer also calculated the amount of drugs attributable to Saikaly individually by adding the quantities set forth in the overt acts listed in the superseding indictment. The report indicated that the amount, 2.5567 kilograms, was the amount of drugs Saikaly believed was attributable to him. However, Saikaly objected to that finding (2.5567 kilograms) arguing that not all of the drug amounts listed in the overt acts associated with him should be attributed to him. Saikaly stated that he was

---

[3]The superseding indictment in the case set forth overt acts indicating that the conspiracy was responsible for well over 5 kilograms of cocaine.

responsible for less than one kilogram of cocaine. Saikaly also objected to the government's position: that he was responsible for more than 5 but less than 15 kilograms. At the resentencing hearing, the district court did not address the issue of the amount of drugs, stating that the purpose of the resentencing hearing was limited and, thus, the amount of drugs attributable to Saikaly was not at issue.

At first glance, it would appear that the government is correct – that Saikaly waived objection to the amount of drugs attributable to him by failing to raise the issue in his direct appeal and in his § 2255 motion. But, there is a problem with the government's argument. Saikaly could not have objected to a presentence report that had not yet been prepared. Saikaly possibly could have objected to the amount of drugs set forth in the first presentence report; nonetheless, a question remains: what is the district court's responsibility in addressing objections to a new and different presentence report prepared for a defendant's resentencing?

This court has clearly stated that on remand following a direct appeal, a district court can consider de novo any arguments regarding sentencing if the remand order does not limit its review. *See United States v. Jennings,* 83 F.3d 145, 151 (6th Cir. 1996) (finding that "[t]he only constraint under which the district court must operate, for the purposes of resentencing, is the remand order itself. Where the remand does not limit the District Court's review, sentencing is to be de novo."). A majority of circuits agree with a de novo approach to resentencing.[4] *See, e.g., United States v. Caterino,* 29 F.3d 1390, 1394-95 (9th Cir. 1994); *United States v. Cornelius,* 968 F.2d 703 (8th Cir. 1992); *United States v. Smith,* 930 F.2d 1450, 1456 (10th Cir. 1991); *United States v. Sanchez Solis,* 882 F.2d 693, 699 (2d Cir. 1989). The policy underlying the presumption of de novo

---

[4]Some circuits disagree, however, viewing a de novo approach to resentencing as an unwarranted "second bite of the apple." *See United States v. Marmolejo,* 139 F.3d 528, 531 (5th Cir.), *cert. denied,* 119 S. Ct. 622 (1998); *United States v. Parker,* 101 F.3d 527, 528 (7th Cir. 1996).

resentencing is to give the district court discretion in balancing all the competing elements of the sentencing calculus. *See United States v. Campbell,* 168 F.3d 263, 265 (6th Cir.), *cert. denied,* No. 99-5037, 1999 WL 462187 (U.S. Oct. 4, 1999).

Considering the foregoing, had this been a general remand after a direct appeal, the district court would have been obligated to consider Saikaly's objections to the presentence report. This case, however, arose from a § 2255 motion, in which the district court ordered the probation department to prepare "a new presentence form." The district court was not operating from an order of remand from the court of appeals, as in the above-mentioned cases.

The same concerns apply at resentencing whether it occurs following direct appeal or a § 2255 motion. In the context of a § 2255 motion, this court has held that a district court can apply an enhancement to a drug sentence when resentencing a defendant after vacating a § 924(c) conviction.[5] *See Pasquarille,* 130 F.3d at 1222. The *Pasquarille* court noted:

It is clear that the 924(c) offense and the underlying offense are interdependent, and must be considered as components of a single comprehensive sentencing plan. Therefore, § 2255 gives the court jurisdiction and authority to reevaluate the entire aggregate sentence to ensure that the defendant receives the appropriate sentence on the remaining count.

*Id.* (citation omitted). The government counters this argument by stating that the present issues are not "interdependent" as is the case with § 924(c) and U.S.S.G. § 2D1.1(b)(1). Despite this difference, however, *Pasquarille* makes it clear that a district court has the authority, on resentencing, to reevaluate "the entire aggregate sentence."

---

[5]The government espoused this position with respect to the first issue presented in this appeal.