RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0122P (6th Cir.)
File Name: 01a0122p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

DAVID MIDDLETON,
*Defendant-Appellant.*

No. 00-3056

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 99-00109—David D. Dowd, Jr., District Judge.

Argued: March 13, 2001

Decided and Filed: April 18, 2001

Before: COLE and GILMAN, Circuit Judges; BORMAN,
District Judge.[*]

---

**COUNSEL**

**ARGUED:** Bret Jordan, HARVEY B. BRUNER &
ASSOCIATES, Cleveland, Ohio, for Appellant. Christian
Strickan, ASSISTANT UNITED STATES ATTORNEY,

---

[*] The Honorable Paul D. Borman, United States District Judge for the
Eastern District of Michigan, sitting by designation.

1

Cleveland, Ohio, for Appellee. **ON BRIEF:** Harvey B. Bruner, HARVEY B. BRUNER & ASSOCIATES, Cleveland, Ohio, for Appellant. Christian Strickan, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

———————

**OPINION**

———————

R. GUY COLE, JR., Circuit Judge. Defendant-Appellant David Middleton ("Middleton") appeals his conviction and sentence for attempting to evade or defeat income tax due and owing, in violation of 26 U.S.C. § 7201 (1994). Middleton concedes that from 1992 through 1996, he failed to file an income tax return despite earning more than $1.5 million in income. He argues now, however, as he did unsuccessfully at trial, that he had a good-faith belief that he had no obligation to pay income tax, because the Internal Revenue Code ("the Code") sets forth no provision that explicitly requires the payment of income tax. Middleton assigns error to the following: (1) the district court's exclusion of his proposed voir dire questions; (2) the district court's admission into evidence of Middleton's 1976 income tax return without permitting him an opportunity to testify concerning its contents; (3) the district court's admission of evidence pertaining to Middleton's income for the tax years 1997 and 1998; (4) the district court's limitation of his cross-examination of Internal Revenue Service ("IRS") Special Agent Edward James; (5) the district court's exclusion of Middleton's trial exhibits; (6) the district court's allowance of Plaintiff-Appellee United States of America ("the Government") to rely upon allegedly unrelated court opinions to impeach Middleton; (7) the district court's instruction of the jury that "voluntary" is not the equivalent of "optional"; (8) the district court's denial of Middleton's motion to dismiss; (9) the district court's failure to define "affirmative act" in its instruction of the jury; (10) the district court's failure to permit Middleton to cross-examine the Government's expert witness, IRS Special Agent Kenneth

Liuzzo, on matters within his field of expertise; (11) the district court's refusal to grant him a three-level acceptance-of-responsibility reduction; (12) the district court's application of a two-level obstruction-of-justice sentencing enhancement; (13) the district court's application of a two-level sophisticated-means sentencing enhancement; (14) the district court's failure to grant Middleton's motion for judgment as a matter of law when the Government allegedly failed to establish that there was any tax due and owing; and (15) the district court's alleged bias, which deprived him of his right to a trial by a fair and impartial jury.

We affirm the judgment of the district court on every issue except that which concerns the district court's application of a two-level obstruction-of-justice sentencing enhancement. The district court's failure to set forth factual findings, independent of those contained within the presentence investigation report, in support of its enhancement of this contested sentencing issue -- as mandated both by FED. R. CRIM. P. 32(c)(1) and our decision in *United States v. Tackett*, 113 F.3d 603 (6th Cir. 1997) -- requires that we vacate Middleton's sentence and remand to allow the district court an opportunity to set forth its reasons for the enhancement. Accordingly, for the reasons set forth below, we AFFIRM the jury's judgment of conviction, VACATE Middleton's sentence, and REMAND to the district court for resentencing.

## I. BACKGROUND

### A. Factual Background

Middleton and his ex-wife, June Middleton, worked as real estate agents for Rockport Real Estate Investments, Inc. ("RRI"), a company owned by Regan Lutsko, and in which Middleton held no ownership interest. In 1981 or 1982, Middleton terminated his employment with RRI, but nevertheless held himself out as a principal of RRI, opening several bank accounts as an authorized accountholder and owner of RRI.

Sometime prior to 1992, the Middletons formed Middleton & Associates, which provided property-tax-reduction services to commercial property owners. The Middletons would identify commercial properties that appeared to be overvalued for property tax purposes, request a reassessment by the county (often without the owners' knowledge or consent), and then seek fees from the owners of 33% to 50% of the tax savings for successful appeals. Middleton also worked during this period as a consultant with Pro Tax, a California-based tax-reduction service operated by his sons. In 1992, Pro Tax began to send checks to Middleton, payable to RRI, for consulting fees. From 1992 through 1996, Middleton's Pro Tax receipts grew progressively larger. Although he received only $38,000 in consulting fees in 1992, that amount had increased to $630,000 by 1996. Inclusive of real estate sales and property tax consulting with both Middleton & Associates and Pro Tax, Middleton received more than $1.5 million in gross receipts over this five-year period: $212,866.64 in 1992; $78,584 in 1993; $275,000 in 1994; $328,137.14 in 1995; and $656,131.21 in 1996.

Middleton would deposit these receipts into various non-interest-bearing business accounts that he had established at banks in California and Ohio under various business names, such as Rockport Realty Investments/Middleton & Associates, Middleton & Associates, and Rockport Realty Investments. According to the Government, Middleton preferred such accounts because they neither generate IRS 1099 forms that record earned interest nor carry employer identification numbers. Middleton was the only authorized signer on these accounts. Once Middleton made a deposit, the Government alleges that he would write several checks and then travel to a rotating schedule of branches to cash them by making a series of structured withdrawals for less than $10,000, a process that sometimes took days to complete. Withdrawals of less than $10,000 do not generate Currency Transaction Reports ("CTRs") from the bank to the United States Treasury Department. From 1992 to 1996, Middleton made 247 withdrawals ($1,455,500 of the $1,556,647.16 that he deposited in his accounts), only three of which were for

counsel whether he would have the opportunity to appeal an adverse ruling of the court: "Yes, you can tell that to the Court of Appeals -- probably from your jail cell"; (2) the district court's statement during a bench conference at trial that "[t]he problem is that with his eleventh grade education, he's trying to tell the jury what the law is"; and (3) the district court's limitation of Middleton's ability to cross-examine Special Agents James and Liuzzo, an issue that we have already addressed.

As a threshold matter, at no point did Middleton ever object to the district court's alleged bias, and absent such an objection, we are obligated to review this issue for plain error. *See* Fed. R. Civ. P. 52(b); *United States v. Smith*, 561 F.2d 8, 13 (6th Cir. 1977). We also note that the district court, on multiple occasions, reminded the jury that it [the jury] was the final arbiter of the facts. *See, e.g.*, JA at 68 ("Nothing the court may say or do during the course of the trial is intended to indicate or should be taken by you as indicating what your verdict should be."); JA at 289 ("Deciding what the facts are is your job, not mine, and nothing I have said or done during the course of this trial was meant to influence your decision about the facts in any way."). Even assuming, however, that the district court made the statements in question (and that such statements were in fact a reflection of its pro-Government bias), these alleged acts of misconduct occurred outside of the presence of the jury, and in any event, did not rise to the level of depriving Middleton of a fair trial. *See United States v. Worthington*, 698 F.2d 820, 827 (6th Cir. 1983). We therefore find no reversible error.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the jury, **VACATE** Middleton's sentence, and **REMAND** this case to the district court for resentencing.

receipts and incurred $55,156 in business expenses. For tax year 1996, however, Middleton, according to James, had a gross income of $656,931, yet incurred business expenses of only $53,239, a 900% increase in receipts over a three-year period accomplished by reducing expenses by $3,000. Such a comparison, Middleton maintains, is evidence of an "obvious error" and the Government cannot be said to have established that Middleton owed any taxes when it was uncertain whether Middleton incurred any business expenses or whether he even earned a profit in any given tax year.

Middleton's argument is without merit. The jury had before it the testimony of James detailing his admittedly conservative estimates of Middleton's gross receipts and expenses from which it could have concluded that Middleton in fact had tax due and owing. Middleton had every opportunity to discredit James's calculation methods and to argue to the jury that there was an "obvious error." Because a reasonable mind, in light of the evidence, could have fairly found Middleton guilty beyond a reasonable doubt, the matter was properly submitted to the jury.

### O. Bias

#### 1. Standard of Review

We review a district court's conduct during trial for an abuse of discretion, *see Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.*, 174 F.3d 801, 805 (6th Cir. 1999), although "[o]utright bias or belittling of counsel is ordinarily reversible error," *United States v. Hickman*, 592 F.2d 931, 933 (6th Cir. 1979). Where, as here, a party fails to object to allegedly prejudicial conduct, however, we review for plain error. *See Mitchell v. Kirk*, 20 F.3d 936, 937 (8th Cir. 1994).

#### 2. Analysis

Although Middleton argues that the district court exhibited bias that "permeated the entire trial," he cites only three specific instances: (1) the district court's statement during a pre-trial hearing, in response to a question by Middleton's

more than $10,000. Middleton never reported his gross receipts to the IRS as compensation received from any of the business entities listed on his bank accounts.

In 1995, after noticing Middleton's pattern of repeated withdrawals of less than $10,000, a Lorain National Bank employee filed a Suspicious Activity Report ("SAR"), which prompted an investigation of Middleton by IRS Special Agent Edward James. James's investigation revealed that Middleton lived what the Government has referred to as "a cash lifestyle." He never used personal or business checks to pay bills, relying instead on cash, money orders, bank checks, and endorsed business receipt checks. James also determined that Middleton had earned $1,556,647.16 in income during the tax years 1992 through 1996, and that he had filed no income tax returns since 1976.

### B. Procedural History

On April 7, 1999, a grand jury of the United States District Court for the Northern District of Ohio returned a five-count indictment against Middleton, charging him with attempting to evade or defeat income tax due and owing for the tax years 1992 through 1996, in violation of 26 U.S.C. § 7201.[1] Relying upon *Cheek v. United States*, 498 U.S. 192 (1991), Middleton admitted that he had not filed a tax return since 1976, but argued at trial that he had a good-faith basis to believe that he was under no legal obligation to do so. A jury rejected his argument and returned a guilty verdict as to all counts on September 30, 1999. The district court sentenced

---

[1]26 U.S.C. § 7201 provides:

Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.

him to 36 months' imprisonment. Before this Court is Middleton's timely appeal from the judgment and sentence.

## II. DISCUSSION

### A. Voir Dire

#### 1. Standard of Review

In reviewing the district court's voir dire in this case, we must determine whether the court "abused the broad discretion vested in [it] by the rulings of the Supreme Court of the United States in [its] impaneling of [the] jury," *United States v. Phibbs*, 999 F.2d 1053, 1071 (6th Cir. 1993) (quoting *United States v. Blanton*, 719 F.2d 815, 822 (6th Cir. 1983)), remaining mindful of the fact that a district court "retains great latitude in deciding what questions should be asked on voir dire." *Mu'Min v. Virginia*, 500 U.S. 415, 424 (1991). We ascertain only whether the district court ensured that Middleton had "a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1960). Only in the absence of a fair trial is reversal warranted. *See id.*

#### 2. Analysis

Prior to jury selection, Middleton submitted a list of proposed voir dire questions that were crafted "to elicit answers from the venire which would reveal the presence of any bias against individuals who do not pay income taxes, or any 'tax protestor' activities." The Court refused to ask Middleton's proposed questions, opting instead to ask more general questions on the subject of bias. Middleton contends that the district court abused its discretion by refusing his requests to inquire into tax-protestor bias on the part of the venire, while permitting the Government an opportunity to ask the venire questions concerning anti-IRS bias.

Middleton's argument is without merit. While it is true that the district court refused to ask the venire *specific* questions on the subject of tax-protestor bias, it did inquire into their

(1) deposited his receipts only into non-interest bearing business bank accounts; (2) opened accounts at several different banks; (3) used several different company names to open these accounts, including one in which he had no ownership interest; (4) traveled to different branches of the same bank to make several structured withdrawals (perhaps as many as 294 over a five-year period) of amounts less than $10,000; and (5) paid all of his bills using cash, money orders, or endorsed business checks without ever retaining a receipt or other record of the transaction. We do not believe that the district court's finding that Middleton resorted to these measures to avoid detection was clearly erroneous. Its application of a sophisticated-means enhancement was therefore appropriate.

### N. Judgment as a Matter of Law

#### 1. Standard of Review

In reviewing a district court's denial of a motion for judgment as a matter of law, we must view the evidence and all reasonable inferences in the light most favorable to the government. *See United States v. Gibson*, 675 F.2d 825, 829 (6th Cir. 1982). If the evidence is such that we find that a reasonable mind might fairly find guilt beyond a reasonable doubt, then we must conclude that the issue is one for the jury. *See id.*

#### 2. Analysis

Middleton contends that the district court erred when it denied his motion for judgment as a matter of law (referred to by the parties as "a motion for a directed verdict") after the Government failed to prove that Middleton had any tax due and owing. The Government's failure to demonstrate this essential element of the crime, he suggests, required the district court to grant his motion. In support of this argument, Middleton points to Special Agent James's testimony in which he stated that he calculated Middleton's gross income receipts from 1992 to 1996 to be $1,556,647.16. For tax year 1993, James concluded that Middleton received $78,584 in

CRIM. P. 32(c), nor is *Smith* authoritative as an unpublished opinion. *See Salamalekis v. Comm'r of Soc. Sec.*, 221 F.3d 828, 833 (6th Cir. 2000). Thus, we hold that when applying an obstruction-of-justice enhancement, the district court must review the evidence and set forth findings independent of those contained in the presentence investigation report. Where a district court fails to provide an on-the-record, independent evaluation of the evidence, the reviewing court must vacate the sentence and remand the case for resentencing. Because the district court in this case failed to set forth any factual findings in support of its enhancement, we **VACATE** Middleton's sentence and **REMAND** this case for resentencing.

## M. Sophisticated-Means Enhancement

### 1. Standard of Review

Whether conduct constitutes "sophisticated means" within the meaning of U.S.S.G. § 2T1.1(b)(2) is a question of fact that we review for clear error. *See United States v. Kraig*, 99 F.3d 1361, 1371 (6th Cir. 1996).

### 2. Analysis

A two-level sentencing enhancement is appropriate "if the offense involved sophisticated concealment," U.S.S.G. § 2T1.1(b)(2), which is defined as "especially complex or especially intricate offense conduct in which deliberate steps are taken to make the offense, or its extent, difficult to detect," U.S.S.G. § 2T1.1, cmt. 4. Middleton argues that the district court erred by applying this enhancement to his sentence simply because he lived what might be described as "a cash lifestyle." He contends that if the district court had looked at the specific actions taken by Middleton, it would have concluded that there was no evidence that Middleton made any attempt to conceal his actions, as required by *United States v. Pierce*, 17 F.3d 146, 150 (6th Cir. 1994), and that, at most, he was "involved in the repetitive act of failing to file tax returns over a number of years." We disagree. Before us is the undisputed evidence that Middleton:

ability both to presume Middleton innocent and to render a judgment in accordance with the relevant law:

> Are you in sympathy with the rule of law that clothes the defendant with the presumption of innocence?
>
> \* \* \* \*
>
> Are you in sympathy with the rule of law that would require you, as a juror, to give the defendant the benefit of reasonable doubt?
>
> \* \* \* \*
>
> Are you in sympathy with the rule of law that does not require a defendant to prove his innocence?
>
> \* \* \* \*
>
> Are you willing to confine your deliberations to the evidence in this case as presented in the courtroom?

We are not persuaded that the jury empaneled consisted of anyone but impartial and indifferent jurors. Thus, we cannot conclude that the district court abused its discretion in conducting voir dire.

### B. Middleton's 1976 Tax Return

### 1. Standard of Review

We review a district court's admission of evidence pursuant to FED. R. EVID. 404(b) for an abuse of discretion. *See Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 716 (6th Cir. 1999) (noting that all evidentiary rulings are reviewed for an abuse of discretion). We are similarly limited in our review of a district court's admission pursuant to FED. R. EVID. 403 of relevant, although potentially prejudicial, evidence: "We must look at the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Zipkin*, 729 F.2d 384, 389 (6th Cir. 1984). We will disturb a district court's determination in this regard only for an abuse of discretion. *See Doe v. Claiborne County*, 103 F.3d 495, 515 (6th Cir. 1996).

## 2. Analysis

At trial, the district court permitted the admission into evidence of Middleton's 1976 income tax return. Special Agent James testified that Middleton had not filed any tax returns since 1976. He also testified that the 1976 return sought a full refund of all taxes withheld and that attached to the return was a statement by Middleton outlining his membership in the Life Science Church, his vow of poverty, and his intent to donate all of his possessions to the Life Science Church. Middleton's counsel never objected to this testimony, but stated at sidebar, without elaboration, that he thought that "specifics" of Middleton's failure to file tax returns since 1976 should be "kept out."

Middleton concedes that admission of his 1976 tax return may have been permissible as evidence of his knowledge of the Code, but argues both that the district court erred when it admitted the *contents* of the return, and that it compounded this error when it prohibited him from "explain[ing] the significance of those tax returns and his change in beliefs since 1976." He suggests that the return, while arguably probative of his "uneducated" 1976 beliefs that he was required to pay income tax, was not relevant to the instant charges or to his defense to those charges, and was unfairly prejudicial, in violation of FED. R. EVID. 403.

We find neither argument persuasive. It is well-settled that previously filed tax returns or other proof of prior taxpayer history is admissible, pursuant to FED. R. EVID. 404(b), to establish a defendant's knowledge of a legal duty to pay taxes. *See United States v. Heise*, 709 F.2d 449, 451 (6th Cir. 1983). We believe that Middleton's 1976 tax return was probative of Middleton's awareness of "the contents of the personal income tax return forms and accompanying instructions" that made plain his legal obligation to file returns in the instant case, *Cheek*, 498 U.S. at 202, and was central to the jury's determination of whether Middleton's good-faith belief claim excused his nonpayment, *see id.* at 203-04. The jury was entitled to infer that if Middleton recognized that he had a

---

not be taken into account in, or will not affect, sentencing." The law of this Circuit requires "literal compliance" with this provision, *United States v. Fry*, 831 F.2d 664, 667 (6th Cir. 1987), as a means of ensuring "that defendants are sentenced on the basis of accurate information and provid[ing] a clear record for appellate courts, prison officials, and administrative agencies who may later be involved in the case," *United States v. Tackett*, 113 F.3d 603, 613-14 (6th Cir. 1997) (quoting *Fry*, 831 F.2d at 667). If a sentencing court fails to make the necessary factual findings, then we must remand for resentencing. *See Tackett*, 113 F.3d at 614 (citing *United States v. Edgecomb*, 910 F.2d 1309, 1313 (6th Cir. 1990)).

Thus, in *Tackett*, where a district court made no independent findings as a basis for its obstruction-of-justice enhancement, but merely heard arguments from counsel and then adopted, without elaboration, the sentence calculated in the presentence investigation report, we vacated the sentence of the court and concluded that "it is impossible to know whether the district court made an independent evaluation of the evidence." 113 F.3d at 614. Similarly here, we cannot conclude that the district court made an independent evaluation of the evidence because it made no specific factual findings on the record to support its enhancement. In a more recent, unpublished opinion, we suggested that a district court's "alleged error in failing to make a factual finding is insignificant," where a defendant had admitted the facts necessary to apply the sentencing enhancement -- for "more than minimal planning" in that case -- and where a district court's enhancement was based on more than the facts and recommendation of the presentence investigation report. *See United States v. Smith*, No. 99-1763, 2000 WL 1769634, *4 (6th Cir. Nov. 16, 2000). *Smith* is distinguishable from the case at bar. We are not convinced that Middleton has admitted to sufficient facts to warrant an obstruction-of-justice enhancement, and we cannot determine what, if anything, the district court relied upon in concluding that an enhancement was appropriate. Moreover, we cannot reconcile the holding of *Smith* with this Circuit's longstanding requirement that a district court literally comply with FED. R.

Government contends, impeded its investigation and prosecution of Middleton and thus warranted an enhancement.

We need not reach the merits of this issue, because the district court made no factual findings in support of its conclusion that an enhancement was appropriate. The following exchange between the district court and Harvey Bruner, Middleton's counsel, is instructive:

Mr. Bruner:    That's where I was a bit confused with your order, because in your order there is no discussion of the other request of [Government counsel], that being the obstruction issue. It starts at 16, he gets plus 2.

The Court:    I guess I just overlooked that.

Mr. Bruner:    So he's at 18 with a decision on obstruction.

The Court:    I can see now that I, in my haste to get this out so you would have a chance to know where we are going, I simply overlooked the obstruction. It's my view that he did engage in conduct that constituted obstruction of justice. And I'm going to add those two levels. And you may have your exception on that determination.

Mr. Bruner:    Thank you, your Honor.

The Court:    I'm sorry I didn't cover that in my ruling that was filed the 20th.

FED. R. CRIM. P. 32(c)(1) provides that "at the sentencing hearing . . . . [f]or each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will

legal obligation to file a tax return more than twenty years prior to trial, then he might reasonably have known of his obligation to file returns during the years at issue in this case. It was precisely the jury's responsibility to consider such information in evaluating his good-faith defense. *See Cheek*, 498 U.S. at 202 ("[I]f the Government proves actual knowledge of the pertinent legal duty, the prosecution, without more, has satisfied the knowledge component of the willfulness requirement."). Thus, we do not believe that any prejudice suffered by Middleton rose to the level of *unfair* prejudice for which reversal is appropriate.

The only remaining question before us is whether the district court erred by refusing to let Middleton testify about how his alleged change of beliefs since 1976 informed his decision not to file income tax returns for the tax years 1992 through 1996. Our review of the record does not support Middleton's claim that the district court prohibited him from so testifying; rather, it was Middleton's own narrative and unresponsive answers to the questions of his attorney that prevented the jury from hearing such testimony. Moreover, it appears, based on our reading of the transcript, that Middleton himself, *unprompted by the district court*, switched to an altogether different subject. Middleton's missed opportunity to explain his basis for failing to file returns subsequent to 1976, therefore, was his responsibility and his alone.

### C. Middleton's Income for Tax Years 1997 and 1998

#### 1. Standard of Review

We review a district court's evidentiary rulings for an abuse of discretion. *See United States v. Foster*, 128 F.3d 949, 954 (6th Cir. 1997).

#### 2. Analysis

Middleton argues that the district court permitted admission of unfairly prejudicial evidence concerning his 1997 and 1998 gross receipts, which totaled almost $1.1 million. According

to Middleton, this evidence, which was used by the Government to impeach him, had "no bearing upon [his] belief during the period of charged crimes and was not relevant to tax returns or taxes owed during the period of charged conduct," and its use by the Government was motivated by a desire to prejudice the jury against a rich person who does not pay taxes. The Government argues that the district court properly admitted the evidence as relevant impeachment material on the questions of: (1) whether Middleton's good-faith belief that he had no legal duty to pay taxes was reasonable in light of the significant amounts of income he received over that two-year period; (2) whether Middleton, as he testified at trial, had only $30,000 in cash in his apartment and an additional $5,000 to $10,000 in his son's California apartment, despite the significant amount of money he received during this period; and, relatedly, (3) whether Middleton, as alleged at trial, had spent 80% of his business income receipts from 1992 through 1996 (totaling more than $2.5 million), yet had no record, receipt, or other document to verify even one business expense.

We find Middleton's argument unpersuasive. The Supreme Court in *Cheek* emphasized that "the more unreasonable the asserted beliefs or misunderstandings are, the more likely the jury will consider them to be nothing more than simple disagreement with known legal duties imposed by the tax laws and will find that the Government has carried its burden of proving knowledge." 498 U.S. at 203-04. Indeed, Middleton's reliance on *Cheek*'s good-faith defense opened the door to scrutiny of both his credibility and the reasonableness of his belief that despite his continued receipt of substantial income, he had no legal duty to pay income tax. Accordingly, we cannot conclude that the district court abused its discretion when it permitted admission of Middleton's 1997 and 1998 gross income receipts.

### 2. Analysis

A two-level obstruction-of-justice enhancement may be appropriate:

> [i]f (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense . . . .

U.S.S.G. § 3C1.1. Middleton argues that there was no basis for the district court to apply a two-level enhancement for obstruction of justice, because: (1) he lacked the willful intent to obstruct an ongoing investigation; (2) any affirmative acts of Middleton (e.g., maintaining a "cash lifestyle") were not intended to conceal his guilt; and (3) even assuming that Middleton's behavior could be said to have obstructed the Government's investigation or prosecution of him, such obstruction was neither significant -- as, he argues, is required by cases from the First, Fifth, Seventh, Ninth, and Tenth Circuits that have interpreted the provision -- nor committed during the pendency of the investigation, prosecution, or sentencing of Middleton.

The Government responds that Middleton continued "to structure withdrawals, use non-interest bearing accounts, pay his bills through cash, money orders and by signing over business receipts, and, in general, engaging in conduct which kept his receipt of substantial amounts of income from being reported to the IRS" even after Special Agent James's investigation of Middleton had begun. The Government also alleges that Middleton lied to James about: (1) the location and amount of money he had received, which information was allegedly necessary to compute more precisely the amount of tax due and owing for prosecution of Middleton; (2) the extent of his expenses and why he had no record of even one expense; and (3) why he chose to make withdrawals only in amounts of $5,000 to $6,000. All of these activities, the

to violate the law (or that the law even applies to him), and absent such an admission, Middleton cannot be said to have "clearly demonstrate[d] acceptance of responsibility for his offense" such that he may be entitled to an acceptance-of-responsibility reduction. We agree.

In *United States v. Tucker*, 925 F.2d 990 (6th Cir. 1991), we declared that a defendant who submits a plea in accordance with *North Carolina v. Alford*, 400 U.S. 25 (1970), conceding the facts underlying an indictment without actually admitting guilt, is not categorically barred from receiving an acceptance-of-responsibility reduction. *See* 925 F.2d at 992. At no point, however, did we suggest that such a defendant is entitled to a reduction as a matter of right, as Middleton maintains. We could not have so held, because the Guidelines make clear that even "[a] defendant who enters a guilty plea [and avoids a trial] is not entitled to an adjustment under this section *as a matter of right*." U.S.S.G. § 3E1.1, cmt. 3 (emphasis added). Thus, although the district court may not have been *barred* from giving Middleton a reduction, under the facts of this case, Middleton clearly is not *entitled* to a reduction. Accordingly, we find that the district court did not clearly err in declining to grant Middleton an acceptance-of-responsibility reduction.

## L. Obstruction-of-Justice Enhancement

### 1. Standard of Review

We conduct a three-step inquiry in reviewing a district court's application of an obstruction-of-justice enhancement. *See McDonald*, 165 F.3d at 1034. First, we review the district court's findings of fact underlying the enhancement for clear error. *See id.* (citations omitted). Second, a district court's conclusion that a given set of facts constitutes obstruction of justice is a mixed question of law and fact that we review de novo. *See id.* (citations omitted). Finally, once a district court has determined that a defendant has obstructed justice, then application of a two-level enhancement at that point is mandatory, and we review the enhancement de novo. *See id.*

## D. Cross-Examination of IRS Special Agent James

### 1. Standard of Review

We review a district court's limits on a defendant's right to cross-examine witnesses for an abuse of discretion. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997).

### 2. Analysis

Middleton asserts that the district court improperly limited his cross-examination of Special Agent Edward James, who testified, over Middleton's objection, that Middleton's bank deposits constituted gross receipts of *income* for which tax was due and owing. Middleton seems to suggest that James's testimony on this point was improper, because he, as a fact witness, disposed of an essential legal element that the Government was required to establish. Middleton points to the following exchange between the district court; Christian Stickan, the Government's counsel; and Harvey Bruner, Middleton's counsel, as evidence of the district court's refusal to permit Middleton an opportunity to explore the basis of James's conclusion that Middleton earned taxable income:

By Mr. Bruner:   Can you, what is your definition of income?

Mr. Stickan:    Objection.

The Court:     Sustained.

By Mr. Bruner:   One moment, your Honor. Now, do you know where income is defined in the Internal Revenue Code?

Mr. Stickan:    Objection.

The Court:     Sustained. This is a fact witness, counselor, not a witness on matters of law.

Mr. Bruner:        I understand.

The Court:        Well, try to show that in your questions.

The Government responds that Middleton's questions were merely an attempt to use James to confuse the jury about what the relevant law actually is, and that the district court therefore properly cut short questions concerning James's knowledge of the state of the law and what Middleton's intent or beliefs actually were.

A district court is permitted to prohibit questioning that it believes to be unnecessarily confusing of the issues. *See Norris v. Schotten*, 146 F.3d 314, 329 (6th Cir. 1998) (noting that "[t]rial judges retain great discretion to impose reasonable limits on the cross-examination of witnesses based on concerns such as harassment, prejudice, confusion of the issues, the witness's safety, and marginal relevancy."). Moreover, inasmuch as a fact witness's testimony intrudes upon questions of law, a district court, as the final arbiter of legal questions, has an obligation to limit, if not terminate altogether, such testimony. Accordingly, we are not persuaded that the district court abused its discretion by limiting Middleton's cross-examination of James. Furthermore, based on the record before us, we find that Middleton suffered no prejudice as a result of the district court's ruling, particularly in light of the fact that Special Agent Kenneth Liuzzo, an expert witness for the Government, testified to exactly what Middleton sought to discredit in his cross-examination of James, *i.e.*, that the funds deposited by Middleton in various bank accounts constituted taxable income. Thus, when the trial is viewed as a whole, we are not convinced that the district court's ruling on this point was an abuse of discretion.

165 F.3d 1032, 1034 (6th Cir. 1999). A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed." *Pennington v. W. Atlas, Inc.*, 202 F.3d 902, 906 (6th Cir. 2000) (citation and quotation marks omitted). A defendant seeking an acceptance-of-responsibility reduction must prove facts entitling her to such a reduction by a preponderance of the evidence. *See United States v. Tucker*, 925 F.2d 990, 991 (6th Cir. 1991).

## 2. Analysis

Middleton argues that he was entitled to a three-level acceptance-of-responsibility reduction, even though he put the Government to its proof and proceeded to trial. Application Note 2 to § 3E1.1, he suggests, expressly contemplates that such a reduction may be appropriate even when a defendant exercises his constitutional right to a trial, where, for example, "a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct.)." U.S. Sentencing Guidelines Manual [hereinafter "Guidelines" or "U.S.S.G."] § 3E1.1, cmt. n.2 (1998). Middleton also suggests that such a reduction was appropriate because, from the beginning of this case, he has admitted to not filing income tax returns for the tax years 1992 through 1996. He even agreed to enter a plea of guilty (and thus avoid trial altogether) if the Government identified the precise Code section that requires him to file a tax return and to pay income taxes. It was only the Government's refusal of Middleton's offer, he contends, that forced the parties to proceed to trial. Indeed, Middleton asserts that even at trial, his factual guilt was never at issue; rather, the jury was faced only with determining whether 26 U.S.C. § 7201 applies to him.

The Government rejects Middleton's premise that he has always freely admitted his factual guilt. At no time, suggests the Government, has Middleton ever acknowledged his intent

government has developed, and the records that have be [sic] presented to the jury.

In evaluating this claim, we find our task made more difficult by the failure of Middleton's trial counsel to proffer to the court, during the pendency of his cross-examination of Liuzzo, what he was attempting to elicit. Thus, we are left only with Middleton's after-the-fact explanation:

> that the IRS had not followed its own procedures and prepared a return for [Middleton] and . . . that IRS agents are without statutory authority to determine whether taxes are due and owing. . . . [and] that Agent Liuzzo's interpretation of the code were [sic] consistent with [Middleton's] and supported his belief that the tax system was voluntary.

Our reading of the trial transcript suggests that the district court was concerned both that Middleton was attempting to use Liuzzo to usurp its role in instructing the jury on questions of law, and that he was introducing ancillary issues that had no bearing on the conduct charged in this case. Consequently, the district court thought it best to limit the scope of Middleton's cross-examination. We are not convinced that the district court's behavior prevented Middleton from "plac[ing] before the jury *facts* from which bias, prejudice or lack of credibility of a prosecution witness might be inferred," and thus, we cannot conclude that the district court abused its discretion. *Dorsey*, 872 F.2d at 167 (citation omitted).

## K. Acceptance-of-Responsibility Reduction

### 1. Standard of Review

A district court's application of the facts to the Sentencing Guidelines is a mixed question of law and fact that we review de novo. *See Razavi v. Comm'r*, 74 F.3d 125, 127 (6th Cir. 1996) ("Mixed questions of law and fact are reviewed de novo."). We will disturb a sentencing court's findings of fact, however, only for clear error. *See United States v. McDonald*,

## E. Trial Exhibits

### 1. Standard of Review

Decisions regarding the admission and exclusion of evidence are within the peculiar province of the district court and are not to be disturbed on appeal absent an abuse of discretion. *See United States v. Tocco*, 200 F.3d 401, 416 (6th Cir. 2000).

### 2. Analysis

At the close of his testimony, Middleton sought to admit into evidence several exhibits on which he had relied to establish his good-faith defense. The district court refused to admit most of Middleton's trial exhibits, in many cases without explanation, and granted Middleton's request only with respect to Exhibit D-4 (IRS Mission Statement), Exhibit D-10 (Privacy Act notice appended to IRS Form 1040), and Exhibit K (videotape of Irwin Schiff outlining his views on the nonpayment of income tax). Middleton argues that the district court erred by limiting his absolute right to present evidence underlying his good-faith belief. He further suggests that the district court's admission of the majority of the Government's exhibits and its exclusion of the majority of Middleton's exhibits improperly implied to the jury that it approved of the Government's case, thus calling into question whether the jury was unbiased at the time it rendered judgment. The Government contends that Middleton's claim should fail for three reasons: (1) Middleton was put on notice *before* the trial began by the Government's September 23, 1999, motion in limine that it would seek to prevent admission of certain trial exhibits; (2) Middleton read for the jury numerous excerpts of materials on which he relied, thus rendering unnecessary their outright admission; and (3) when informed at trial by the district court that it might not permit admission of all of the excerpts that had been read into the record by Middleton, Middleton's counsel responded, "I understand that."

While a party must be afforded an opportunity to read for the jury relevant excerpts of the materials on which he relied in forming his belief that he was not obligated to pay taxes, we have declined to set forth a blanket rule requiring district courts to admit those excerpts into evidence. *See United States v. Gaumer*, 972 F.2d 723, 725 (6th Cir. 1992). The *Gaumer* panel observed:

This does not mean that the trial court was required to permit the physical introduction of exhibits comprising hundreds of pages. At a minimum, however, defendant Gaumer should have been allowed to read relevant excerpts to the jury. And if the physical exhibits were to be kept out, the defendant should have been so advised before it was too late for him to introduce excerpts orally.

*Id*. Likewise, in the instant case, the district court allowed Middleton the opportunity to read into the record numerous excerpts, and to use them and a videotaped presentation outlining his views to bolster his good-faith defense, but refused to permit their admission into evidence. Such a decision was neither unfair to Middleton -- the district court went so far as to put Middleton on notice before trial that it might not permit the admission of his exhibits -- nor improper in light of the potential for jury confusion that the admission of such exhibits would have created. Where a district court believes that the probative value of proffered exhibits used to support a good-faith defense would be outweighed by possible confusion of the issues, it may properly refuse to admit such exhibits into evidence. *See United States v. Nash*, 175 F.3d 429, 435 (6th Cir. 1999) (noting that district court properly excluded exhibits where such exhibits held "the danger of confusing the jury by introducing purported legal analysis that was at odds with the district court's instructions"). Certainly, the district court was well within its discretion to refuse admission of those excerpts it found to be "hopelessly confusing to the jury."

transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal.

317 U.S. at 499. Even if the *Spies* Court had intended to outline an exhaustive list of affirmative acts -- which, by its very language, it did not -- Middleton's effort to manage his affairs in a manner so as to avoid generating the records that usually attend earning and spending income would certainly qualify as an affirmative act under *Spies*. *See United States v. Daniel*, 956 F.2d 540, 543 (6th Cir. 1992) (noting that extensive use of cash may be sufficient evidence of affirmative conduct to sustain a conviction for willful income tax evasion). Middleton's failure to demonstrate that the district court plainly erred precludes us from granting him relief on this basis.

### J. Cross-Examination of Expert Witness Special Agent Kenneth Liuzzo

### 1. Standard of Review

We review a district court's limits on a defendant's right to cross-examine witnesses for an abuse of discretion. *See Dorsey v. Parke*, 872 F.2d 163, 166-67 (6th Cir. 1989).

### 2. Analysis

Middleton argues that the district court improperly limited his cross-examination of IRS Special Agent Kenneth Liuzzo by preventing Middleton from exploring the IRS's role in assessing taxes of an individual if that individual fails to file returns voluntarily. By way of example, Middleton points to the court's statement after a series of questions by Middleton:

The issue is not tax liability here. Let's move on. The issue is whether there was a tax due and owing. He's opined that there is. Now, you can question him about that opinion and the jury can reflect on whether or not this testimony is credible, as to whether there was a tax due and owing based upon the information that the

Middleton contends that the district court, contrary to *United States v. Spies*, 317 U.S. 492 (1943), erred by failing to define for the jury exactly what constitutes "an affirmative act," which left the jury with "the presumption that the acts alleged by the Government and included in the charge automatically met the definition of 'affirmative acts of evasion.'" The district court, Middleton suggests, provided an incomplete instruction by failing to direct the jury that it was not obligated to conclude that the acts alleged in the indictment were in fact "affirmative acts," but that it was permitted to infer on the basis of the evidence that Middleton did (or did not) affirmatively act to evade or defeat income tax. Finally, in what is less a challenge of the actual jury instruction than an attack on the sufficiency of the indictment, Middleton asserts that none of the affirmative acts charged by the Government were listed by the *Spies* Court as behavior that constitutes an affirmative act, and thus, on that basis alone, his indictment should have been dismissed.

We reject each of Middleton's arguments. As a threshold matter, Middleton cites no authority, and we have found none, that requires a trial court to define for a jury what constitutes an "affirmative act." That the district court failed to instruct the jury that it could draw a *permissive* inference on whether Middleton took affirmative steps to avoid payment of income tax cannot be said to have been plain error. Finally, we are not persuaded by Middleton's argument that the indictment was defective on its face for its failure to allege an affirmative act recognized by the *Spies* Court. In making such an argument, Middleton apparently misapprehends the plain language of the opinion:

> By way of illustration, and not by way of limitation, we would think affirmative willful attempt may be inferred from conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in

### F. Impeachment Evidence

### 1. Standard of Review

We review a district court's evidentiary rulings for an abuse of discretion. *See United States v. Foster*, 128 F.3d 949, 954 (6th Cir. 1997).

### 2. Analysis

Middleton's good-faith basis not to pay taxes was allegedly predicated in part on the teachings of Irwin Schiff, a self-proclaimed tax guru who has written numerous books and lectured extensively on the reasons why citizens have no legal obligation to pay income tax. Middleton testified that, before deciding not to file a tax return, he independently verified the validity of Schiff's teachings and concluded that he was under no legal obligation to pay income tax:

> Essentially, I don't believe that you should rely just on something that somebody says. I checked everything out. I reviewed every statute, every regulation, every court case, and until I was thoroughly convinced that what he was saying was reliable, I wouldn't rely on it.

Middleton also conceded that he continued to follow Schiff's materials even though he knew that Schiff had previously been convicted of felony income tax evasion. At trial, the Government cross-examined Middleton and sought to draw into question the reasonableness of his reliance on Schiff's teachings by citing lower court cases in which Schiff had been a party and in which his views on the nonpayment of taxes had been criticized as "blatant nonsense."

Middleton contends that the district court improperly allowed the Government to use these court opinions, which he alleges were inflammatory and irrelevant, and that the Government's failure to disclose prior to trial its intent to use these cases violated FED. R. CRIM P. 16. The Government responds that it was appropriate for it to test the reasonableness of Middleton's beliefs, particularly in light of

statements made by Middleton on direct examination that his good-faith belief was well-founded. *See, e.g.,* JA at 191-92 ("So being the type of individual who likes to research and understand things, I went to the law library and I looked up all the cases [Schiff] cited, and I confirmed that the conclusion that the statements that he said were in there were in there."); JA at 197-98 (Middleton's testimony that he told Special Agent James that "[Middleton's] study of the tax law showed that the codes . . . don't all mean what people think they mean. . . . [and that] there was no section of the Internal Revenue Code which made me liable for taxes."). Thus, the Government asserts that the lower court opinions relied upon were neither inflammatory nor irrelevant, but an appropriate means for it to challenge the reasonableness of Middleton's beliefs. We agree.

The Government was under no obligation to disclose to Middleton prior to trial its intent to rely upon these opinions, as they were not "material to the preparation of the defendant's defense," or "intended for use by the government as evidence in chief at the trial," or "obtained from or belong[ing] to the defendant." FED. R. CRIM. P. 16(a)(1)(C). More importantly, as the *Cheek* Court made plain:

> the jury would be free to consider any admissible evidence from any source showing that [the taxpayer] was aware of his duty to file a return and to treat wages as income, including evidence showing his awareness of the relevant provisions of the Code or regulations, of court decisions rejecting his interpretation of the tax law, of authoritative rulings of the Internal Revenue Service, or of any contents of the personal income tax return forms and accompanying instructions that made it plain that wages should be returned as income.

*Cheek*, 498 U.S. at 202. Thus, upon finding that the lower court opinions involving Schiff were admissible, the district court properly permitted the Government to use them to impeach Middleton on the question of how thoroughly he researched the good-faith-belief defense on which he was

### I. Jury Instruction Defining "Affirmative Act"

#### 1. Standard of Review

When reviewing a jury instruction to which a defendant failed to object at trial, such as the one at issue here, we review only for plain error, which requires us to determine "whether the instructions, when taken as a whole, were so clearly wrong as to produce a grave miscarriage of justice." *United States v. Sanderson*, 966 F.2d 184, 187 (6th Cir. 1992) (citation omitted).

#### 2. Analysis

The indictment charged Middleton with concealing income and avoiding payment of income tax through the following affirmative conduct:

1. transacting business in the name of unincorporated business entities, so that payments received represented business receipts, not personal income, from a business which did not file tax returns,

2. concealing his receipt of business income by depositing the checks his business received into non-interest bearing bank accounts so there would be no reporting of earned income to the IRS,

3. concealing his withdrawal of funds from said accounts for personal use by:

   a. writing numerous checks on the accounts payable to cash, in amounts less than $10,000,
   b. negotiating these checks for currency, and not reporting his receipt of those funds to the IRS as compensation on IRS W-2 forms or otherwise, and

4. concealing his disposition of income by making personal expenditures using currency, money orders, and endorsed third party checks rather than using a personal checking account.

for which he is liable."[2]    In support of this argument, he asserts:

> [26 U.S.C. § 7201] is included in Subtitle F entitled "Procedure and Administration" and contains penalty provisions for attempts to evade or defeat any taxes that are imposed under Title 26. However, section 7201 of the Code does not impose an income tax or any tax at all. Furthermore, it does not make the Defendant liable for income taxes, nor does it require the Defendant to pay income taxes. In order for the Defendant to know whether or not he has violated any provisions of the Code he must be informed not only of the Code section that contains the penalty provisions under Subtitle F, but also of the Code sections that make him liable for the tax he is accused of attempting to evade.

The Government's failure to identify the relevant Code sections, Middleton asserts, rendered the indictment fatally flawed. We disagree. The indictment enumerated each element of tax evasion and clearly provided Middleton with notice of the statute under which he was being prosecuted. The Government had no obligation to set forth anything more than it did in the indictment. *See United States v. Waldeck*, 909 F.2d 555, 557 (1st Cir. 1990) (indictment substantially similar to the instant one found to be sufficient); *Hayes v. United States*, 407 F.2d 189, 192 (5th Cir. 1969) (same); *Himmelfarb v. United States*, 175 F.2d 924 (9th Cir. 1949) (same). That the Government cited only 26 U.S.C. § 7201 did not limit Middleton's ability to know the nature of the accusation against him and to plead an acquittal or conviction in bar of future prosecution for the same offense. *See Hamling v. United States*, 418 U.S. 87, 117 (1974). Middleton's argument, therefore, must fail.

---

[2]Middleton now suggests, as he did before trial, that, having already admitted to not filing tax returns for the period at issue in this case, he will withdraw this appeal and accept the judgment of the district court if the Government will cite the Code sections his nonpayment of taxes violated.

relying to excuse his nonpayment of income tax. We find no abuse of discretion.

### G. Jury Instruction Defining "Voluntary"

#### 1. Standard of Review

In reviewing a properly preserved jury instruction, we must determine "whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury." *United States v. Martin*, 740 F.2d 1352, 1361 (6th Cir. 1984). We will reverse a district court for its refusal to deliver a requested instruction "only if that instruction is (1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense." *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991).

#### 2. Analysis

At the close of the evidence, the district court gave the following jury instruction:

> The word voluntary is not the equivalent of optional. To the extent that income taxes are said to be voluntary, they are only voluntary in that one files the returns and pays the taxes without the IRS first telling each individual the amount due and then forcing payment of that amount. The payment of income taxes is not optional.

Middleton makes the novel argument that the district court erred by instructing the jury that "voluntary" is not the equivalent of "optional." Noting that the instruction provided by the district court was lifted almost verbatim from *United States v. Schiff*, 876 F.2d 272, 275 (2d Cir. 1989), the Government contends that the instruction was both appropriate and necessary to prevent juror confusion, particularly in light of Middleton's repeated narratives during the trial that often blurred the line between his testifying to his beliefs and stating for the jury his view of the relevant law.

We believe that Middleton's argument lacks merit. The district court's responsibility, one that we believe it met, was to provide the jury with a correct statement of the law. Middleton has not demonstrated that his requested instruction equating "voluntary" with "optional" was a correct statement of the law that the district court was required to provide the jury. In fact, the contrary is true. *See United States v. Gerads*, 999 F.2d 1255, 1256 (8th Cir.1993); *Wilcox v. Comm'r*, 848 F.2d 1007, 1008 (9th Cir.1988); *see also Treglowne v. United States*, No. 99-CV-70323, 2000 WL 264677, *7-*8 (E.D. Mich. Jan. 21, 2000) ("The assertion that the filing of an income tax return is voluntary is, likewise, frivolous [because 26 U.S.C. § 6012(a)(1)(A)] requires that every individual who earns a threshold level of income must file a tax return." (citations omitted)). We are not convinced that Middleton's erroneous understanding of the meaning of "voluntary" in this context was objectively reasonable.

Middleton's argument that the district court's failure to use his requested instruction substantially impaired his good-faith defense is likewise without merit. Simply because the district court stated the relevant law did not remove from the jury its obligation under *Cheeks* to determine whether Middleton had "a good-faith misunderstanding and belief . . . whether or not the claimed belief or misunderstanding [was] objectively reasonable." *Cheeks*, 498 U.S. at 202. Middleton makes no argument that the district court provided the jury with an erroneous good-faith instruction. Rather, he suggests that the district court's statement distinguishing "voluntary" from "optional" was an improper substitution of its view of the validity of Middleton's good-faith defense. We disagree. The district court did not steer the jury's decisionmaking in one direction or another, but merely stated the law that the jury was obligated to consider when evaluating the credibility of Middleton's good-faith belief. In sum, we believe that the district court "fairly and adequately submit[ted] the issues and applicable law to the jury." *Martin*, 740 F.2d at 1361. Reversal on any of the aforementioned bases is not warranted.

### H. Motion to Dismiss

#### 1. Standard of Review

Mindful that "a defendant wishing to challenge an indictment valid on its face bears a heavy burden," *United States v. Lamoureux*, 711 F.2d 745, 747 (6th Cir.1983), we review a district court's refusal to dismiss an indictment for an abuse of discretion, *see United States v. Powell*, 823 F.2d 996, 1000 (6th Cir.1987). An indictment is generally deemed sufficient "if it states the offense using the words of the statute itself, as long as the statute fully and unambiguously states all the elements of the offense." *United States v. Monus,* 128 F.3d 376, 388 (6th Cir.1997) (internal quotation marks and citations omitted). In making this determination, we are guided by two factors: first, whether the indictment "contains the elements of the offense charged and fairly informs a defendant of the charges against which he must defend, and second, [whether it] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Id.* (citation omitted).

#### 2. Analysis

Middleton argues that the district court erred by refusing to dismiss the then-pending indictment against him after the Government failed to identify which section of the Code his nonpayment of taxes violated. He concedes that to prove income tax evasion under 26 U.S.C. § 7201, the Government must establish: (1) willfulness, (2) the existence of a tax deficiency, and (3) an affirmative act by the defendant constituting evasion. *See United States v. Reed*, 821 F.2d 322 (6th Cir. 1987). Citing no authority, he urges two additional requirements: an identification of "the statute that makes an individual liable for an income tax" and an identification of "the statute that requires an individual to pay the income tax